**FACTORY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**INSTEEL INDUSTRIES, INC., Defendant.**

No. 1:01CV–00907–S.

United States District Court, M.D. North Carolina.

Dec. 13, 2002.

Robert W. Fisher, Robins, Kaplan, Miller & Ciresi, Atlanta, GA, Paulo Emilio Franco, Jr., Wright, Robinson, Osthimer & Tatum, Richmond, VA, for plaintiff.

Richard T. Rice, Michael Montecalvo, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, Douglas William Hanna, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, Rebecca G. Ellis, Womble, Carlyle, Sandridge & Rice, PLLC, McLean, VA, for defendant.

Daniel Kenneth Felsen, McManus, Schor, Asmar & Darden, L.L.P., Washington, DC, for Costanza Contracting Company, Inc.

Steven Douglas Hedges, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, NC, for John S. Clark Company, Inc.

### MEMORANDUM OPINION and ORDER

OSTEEN, District Judge.

This matter is before the court on Defendant Insteel Industries, Inc.'s ("Insteel") Motion to Lift, or in the Alternative, to Modify the Costanza Protective Order. After review of Insteel's and Non–Party Costanza Construction Company, Inc.'s ("Costanza") briefs and supplemental submissions, the court will deny the motion because of Insteel's failure to show good cause for modifying or vacating the protective order.

### I. FACTUAL AND PROCEDURAL HISTORY

This case involves a dispute over the scope of costs and repairs under a comprehensive insurance policy for severe roof damage to Insteel's wire products facility in Fredericksburg, Virginia. Insteel hired Costanza, a construction company, to repair the roof damage to its facility. Insteel states that it paid Costanza over $3 million for the repairs. (Def.'s Br. Supp. Mot. Lift, or in the Alternative, Modify the Costanza Protective Order.) Plaintiff Factory Mutual Insurance Company ("Factory Mutual") refused to reimburse Insteel for a substantial portion of the repairs due to Costanza's allegedly excessive fees and improper billing methods.

Factory Mutual filed an action for declaratory judgment against Insteel in the Eastern

District of Virginia, Richmond Division, on April 27, 2001. During discovery, Factory Mutual subpoenaed Costanza to produce documents related to the Insteel repairs. Costanza objected to the subpoena and the parties privately negotiated and stipulated to the terms of a protective order, which was signed by Judge Williams. The case was transferred to this court pursuant to 28 U.S.C. § 1404(a) and was set for mediation on October 16, 2001. The parties settled their dispute on December 7, 2001.[1] On January 3, 2002, a stipulation of dismissal with prejudice was filed, and the case was closed. Three weeks later, Insteel filed this motion seeking to lift, or in the alternative, to modify the Costanza protective order.

Neither party attempted to challenge any of the protective order's confidentiality designations before the settlement negotiations were completed nor at any time prior to the filing of this motion. Although Insteel stipulated to the terms of the protective order, it now argues that the documents falling under the label "confidential" do not qualify as "trade secrets" under Federal Rule of Civil Procedure 26(c)(7). In the alternative, Insteel requests to retain a copy of the material designated "confidential" as the order now stands.

## II. DISCUSSION

■ The first issue to be decided is whether this court has proper jurisdiction to adjudicate this motion. According to the relevant case law, a transferee court has the authority to modify or to lift protective orders signed by another district court judge. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.,* 821 F.2d 139, 147 (2d Cir.1987); *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.,* 664 F.2d 114, 118 (6th Cir.1981). *But see* 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 2044.1 (1994) ("Ordinarily the request for modification should be addressed to the court that entered the protective order."). A final judgment or stipulation of dismissal does not diminish the district court judge's right to lift or to modify such orders. *See Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 782 (1st Cir.1988). Therefore, this court will exercise its right to decide whether to modify or to vacate the protective order at issue.

■ The second issue in ruling on this motion is which party has the burden of showing good cause for supporting or opposing modification of the protective order. Federal Rule of Civil Procedure 26(c) ("Rule 26(c)") provides that protective orders may be granted for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ...." Fed.R.Civ.P. 26(c)(7). Rule 26(c) does not explain, however, whether the party seeking or opposing the modification bears the burden of showing good cause. Case law provides a framework for determining the standard of proof. "The standard for modifying a protective order depends on whether the parties were required to demonstrate good cause for the issuance of the order, whether the parties relied on the order, and whether the parties stipulated to the terms of the order." *Longman v. Food Lion, Inc.,* 186 F.R.D. 331, 333 (M.D.N.C.1999). If good cause were not required to be shown when the order was initially entered, the party who later seeks to prevent disclosure of the information bears the burden of showing good cause. *Id.* If good cause were shown initially, however, the party seeking to modify the order must show good cause. *See Bayer AG and Miles, Inc. v. Barr Labs., Inc.,* 162 F.R.D. 456, 463–64 (S.D.N.Y.1995).

■ The protective order in this case, entitled "Stipulation, Agreement and Protective Order," was signed by the parties, Costanza, and Judge Williams on August 8, 2001. It is arguably a "blanket" protective order be-

---

1. Insteel alleges that after discovering the fraudulent and improper billing practices in Costanza's documents during settlement, Factory Mutual claimed the fees were "grossly overstated" and refused to reimburse Insteel for a substantial portion of the repair costs. (Def.'s Br. Supp. Mot. Lift, or in the Alternative, Modify the Costanza Protective Order at 3.) Subsequently, Insteel alleges that it "greatly reduced its settlement demand ...." (*Id.*)

cause it "permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information." *Bayer*, 162 F.R.D. at 465. No hearing for good cause was held and no mention of good cause was made in the protective order itself. Instead, the parties and Costanza stipulated to the terms of the order before it was even submitted to Judge Williams for his approval. Arguably, the parties and the non-party "implicitly acknowledged" that there was good cause for protecting such sensitive information by stipulating to the order's terms. *Id.* at 464 ("[G]iven the commercially-sensitive nature of the information to be exchanged in discovery, there was 'good cause' for preventing party personnel from having access to the information. The parties implicitly acknowledged this by stipulating to the Protective Order."). Insteel, then, has the burden of showing good cause to modify the order because good cause was at least implicitly acknowledged when the order was initiated.[2]

Having determined that good cause was implicitly acknowledged (albeit not required) at the order's inception, and that the parties and the non-party stipulated to the terms of the order, the court now turns to the final prong of the *Longman* standard: whether the parties and/or the non-party relied on the order. An evaluation of several of the order's provisions is helpful in determining the parties' and Costanza's reliance on the order. The order protects, but is not limited to protecting, information that relates to "confidential, trade secret, proprietary, technical, business, and/or financial information

of non-party Costanza" and any materials referencing Costanza's "manners and methods of repairs" as "[c]onfidential." (Non-party Costanza's Br. Opp'n Mot. Lift, or in the Alternative, Modify Costanza Protective Order Ex. F.) Paragraph 2 of the order states that "[s]uch '[c]onfidential material' shall be used only for purposes directly related to this action, and for no other purpose whatsoever." The parties further stipulated that "[a]fter this action is finally completed, including all appeals, counsel for all parties shall offer to either return to the producing party or destroy all materials designated Confidential." (*Id.* ¶ 9.)

Costanza asserts that it agreed to turn over its documents pursuant to the protective order in reliance on Paragraph 9 making the information applicable to *this* action only. If the protective order were not agreed to by the parties and signed by Judge Williams, Costanza contends that it would not have produced the information. This court finds no reason to doubt Costanza's contention, especially because as a non-party, Costanza is not subject to the same discovery parameters as a party. In addition, the mutually consensual protective order avoided potential faults in the subpoena issued to Costanza, making it unlikely that the parties would have been able to get the information from Costanza in any other way but through the protective order.[3] In addition, the fact that both parties as sophisticated business entities agreed to the highlighted provisions in particular, supports Costanza's claim that it relied on the order. With regard to the parties' reliance on the order, Insteel indicated

2. Additionally, when the party seeking modification stipulated to the terms of the order, courts have treated the issue of showing good cause differently. *Bayer AG and Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y.1995) ("Where, however, the modification motion is brought by the party who stipulated to a blanket protective order, the party should be held to its agreement and thus should have the burden of showing good cause for its modification request."); *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 556 (S.D.N.Y.1985), *aff'd in part, dismissed in part*, 797 F.2d 85 (2d Cir.1986).

3. Costanza filed objections to the subpoena in the Eastern District of Virginia, Richmond Division, on July 12, 2001, although the subpoena was

issued under the Maryland District Court's authority in Kingsville, Maryland; over 100 miles from the Virginia district court. Allegedly, the subpoena was defective for the following reasons: (1) it required producing documents more than 100 miles outside of the district where it was served, (2) it did not provide at least 14 days in which to reply, and (3) it requested the disclosure of trade secrets, other confidential research, development, or commercial information. Costanza did *not* file a motion to quash or to modify the subpoena as provided under Federal Rule of Civil Procedure 45(c)(3). Instead, the parties and the non-party agreed to negotiate privately a protective order covering the documents in the subpoena.

its desire to agree to "any proposed order that protects Costanza's legitimate business interests" because Costanza's position on disclosure had "nearly halted the production of documents" in the case. (Non–Party Costanza's Surreply Br. Ex. 3.) Therefore, both Insteel and Costanza relied on the protective order to facilitate discovery in the instant suit.

■ Because good cause was implicitly shown when the protective order was entered into, both parties and Costanza stipulated to its terms, and all sides relied on it, Insteel must show good cause in asking this court to prevent disclosure of the information protected by the order. *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 333 (M.D.N.C.1999). After making this determination under *Longman*, it is even more apparent that Insteel must show good cause because this issue is treated differently when modification is sought for purely investigative purposes in which no actual litigation is involved. *See H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 90 (2d Cir.1986). In such a case, modification of the protective order is less likely to be granted, in part because the absence of any pending litigation diminishes the likelihood that costly and time-consuming discovery will be avoided.[4] *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 556 (S.D.N.Y.1985), *aff'd in part, dismissed in part*, 797 F.2d 85 (2d Cir.1986).

Here, Insteel's sole motive in seeking to modify or to vacate the protective order is arguably to investigate potential claims it might have against Costanza without duplicating discovery. Insteel concedes that "possible collateral litigation" concerning Costanza's allegedly fraudulent billing practices is one of the reasons behind its motion to modify or to vacate the order. (Def.'s Br. Supp. Mot. Lift, or in the Alternative, Modify Costanza Protective Order at 7.) Insteel's other purported reason for modification, saving the court's and the parties' time and resources, is insufficient, standing alone, to establish good cause when investigation of possible litigation is the ultimate purpose. *See Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F.Supp. 393, 404 (W.D.Va.1987); *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 557 (S.D.N.Y.1985), *aff'd in part, dismissed in part*, 797 F.2d 85 (2d Cir.1986).

Insteel also argues, however, that its lack of knowledge of specific allegations of fraudulent billing practices by Costanza justifies retaining Costanza's documents because Insteel would never have agreed to the order if it had known about these allegations beforehand. When Factory Mutual's complaint is viewed in light of this contention, however, the court has difficulty in finding that Insteel did not know that Costanza's allegedly fraudulent or improper billing practices would be at the crux of the dispute. The complaint specifically states that "Factory Mutual's consultants have concluded that the corrective repair methods used by Insteel's contractors were excessive and were not required as a direct result of the damages from the incident." (Compl.¶ 35.) Although "fraud" is not specifically noted in the complaint, Factory Mutual indicated throughout discovery that the contractor's method of billing and assessing the repairs was a major issue in the litigation. The protective order itself enumerates "financial information of non-Party Costanza" and "Costanza's manners and methods of repairs" as protected documents. (Non-party Costanza's Br. Opp'n Mot. Lift, or in the Alternative, Modify Costanza Protective Order Ex. F.) It is unclear, then, how Insteel could not have reasonably foreseen that Costanza's allegedly improper and fraudulent billing practices would be at the heart of the litigation.[5]

---

4. Modification of protective orders may be appropriate if repetition of discovery could be avoided without tangibly prejudicing the substantial rights of another party. *Wilk v. American Med. Assoc.*, 635 F.2d 1295, 1299 (7th Cir.1980). After such prejudice is demonstrated, the district court has broad discretion in determining whether the benefits of a possible modification would outweigh the injuries to the parties. *Id.*

5. The court is similarly unpersuaded that Insteel was "duped" into signing the protective order because it was unaware of certain documents implicated by the order. The record does not indicate any evidence of misrepresentation or fraud on behalf of Factory Mutual, Insteel, or Costanza in reaching an agreement regarding the protective order.

Further, although Insteel stipulated to a protective order which severely limited its access to Costanza's billing records and practices in *this* action, Insteel is not precluded from retrieving the documents pursuant to discovery in a separate action. The protective order at issue here will not apply to a subsequent lawsuit between Insteel and Costanza. Therefore, this court's refusal to modify or to vacate the protective order does not reach an inequitable result. Repetition of discovery is simply unavoidable when a party, such as the Defendant in this case, seeks to modify or to vacate a protective order solely to investigate possible collateral litigation. Insteel has failed to show good cause for modification or vacation of the protective order.

IT IS ORDERED that Defendant Insteel Industries, Inc.'s Motion to Lift, or in the Alternative, to Modify the Costanza Protective Order [48] is DENIED.