# IN THE SUPREME COURT OF IOWA

No. 08–1087

Filed May 7, 2010

JAN REIS and
DEAN STOWERS,

>    Plaintiffs,

vs.

IOWA DISTRICT COURT
FOR POLK COUNTY,

>    Defendant.

On further review from the Iowa Court of Appeals.

Certiorari to the Iowa District Court for Polk County, Carla T. Schemmel, Judge.

Plaintiffs sought review of a district court determination holding them in contempt. **DECISION OF COURT OF APPEALS VACATED; WRIT SUSTAINED IN PART AND ANNULLED IN PART; AND CASE REMANDED.**

Dean Stowers of Stowers Law Firm, West Des Moines, for plaintiff Dean Stowers.

Mari Culver of Duncan, Green, Brown & Langeness, P.C., Des Moines, for plaintiff Jan Reis.

Randall D. Armentrout, Scott A. Sundstrom, and Mitchell R. Kunert of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for defendant.

**STREIT, Justice**.

Jan Reis and Dean Stowers were held in contempt of court for violation of a protective order. They argue the district court lacked jurisdiction to enforce the protective order and lacked substantial evidence to support a finding of contempt. We hold the court properly exercised jurisdiction to enforce the protective order and there was substantial evidence to support the finding of contempt with regard to Stowers. We reverse the district court's finding that Reis be held in contempt.

## I.     Background Facts and Prior Proceedings.

Jan Reis filed an employment-related lawsuit against her previous employer, Care Initiatives. As part of that litigation, Reis's attorneys and Care Initiatives' attorneys agreed to a protective order, which was entered by the court. Reis and her attorney spouse, Dean Stowers, were designated as parties in the protective order and, according to its terms, were permitted to see discovery designated as confidential upon signing an Undertaking To Be Bound By Protective Order. The protective order requires counsel to maintain these signed undertakings. The signed undertakings are not in the record, although Reis and Stowers received confidential documents during the course of the litigation and admit they signed the undertakings.[1]

The protective order provides that documents designated as confidential shall be used "only for the purposes of this litigation and for no other purpose, except as otherwise provided in this Stipulation and Protective Order." The protective order further states:

> All persons who are afforded access to any documents or information subject to this Stipulation and Protective Order

---

[1] The appellate brief filed by Reis and Stowers acknowledges "All of the parties, and Ms. Reis's husband, Dean Stowers, executed a written 'Undertaking To Be Bound By Protective Order.'"

shall not use or disclose such documents or information for purposes of business or competition, or for any purpose other than the preparation for and the conducting of this proceeding, or any appellate review thereof, and then solely as contemplated herein, and shall keep the documents and information secure and confidential in accordance with the purposes and intent of this Stipulation and Protective Order.

The parties eventually reached a confidential settlement agreement and release in November 2007, which was signed by Reis but not by Stowers. This settlement agreement addressed the discovery exchanged during the litigation:

> Reis agrees to return to Care attorneys any and all documents in her or her attorneys' possession including copies in any form, that pertain to Care, Reis's employment at Care, or Reis's lawsuit against Care including but not limited to materials taken from Care prior to her termination and company documents produced during discovery, including electronic documents and emails, except documents protected by Reis's attorney client privilege or work product, payroll records, and her personnel file. Care's attorneys will return all medical and mental health records obtained in the litigation, including copies in any form, to Reis's attorneys.

During the litigation, Reis was represented by Paige Fiedler and Thomas Newkirk, of the law firm Fiedler & Newkirk. In December 2007, Newkirk sent an email to Randall Armentrout, counsel to Care Initiatives, stating they had culled out all of their documents and that 6–8 bankers boxes were ready for Armentrout to pick up. However, prior to Care Initiatives picking up the documents, Reis, through Stowers, terminated Fiedler and Newkirk as her attorneys and requested that her file and all documents be sent to her. Fiedler and Newkirk complied with this request and sent all of the documents to Reis. In January 2008, Fiedler and Newkirk informed Care Initiatives' counsel that they no longer represented Reis or Stowers, Reis had taken possession of all documents, and communications regarding the documents should be directed to Reis or Stowers.

Reis testified she then began to sort through the documents to ensure none of her own medical records, which apparently had been produced in voluminous amounts, were contained in the boxes to be returned to Care Initiatives. She testified she found her own medical records in the boxes of Care Initiatives' documents.[2]

While Reis was in possession of these documents, Stowers sent a string of emails to Care Initiatives' employees, agents, and counsel. On February 12, Stowers sent an email to Care Initiatives' Chief Financial Officer (CFO) George Michael McDaniel which "afforded [McDaniel] the opportunity to quietly tender [his] resignation" from Care Initiatives based on "information known and that disclosed publicly." On February 13, Stowers sent an email to Care Initiatives' board member Richard Thornton, requesting that Thornton "resolve [his] dilemma" by making a "personal cash donation to a charitable cause" in Reis's name and by resigning. On February 14, Randall Armentrout, counsel to Care Initiatives, sent a letter to Reis and Stowers referencing the protective order and settlement agreement and requesting the return of Care Initiatives' documents. On February 17, Stowers replied to Armentrout and suggested he would not be comfortable turning over documents to Care Initiatives because of a potential investigation by Senator Grassley and the need to safeguard evidence from destruction.

Care Initiatives filed an application for contempt and to enforce the settlement agreement, asking the court to order Reis, Stowers, Fiedler, and Newkirk to show cause why they should not be held in contempt. After an evidentiary hearing, the court held Reis and Stowers in contempt. On writ of certiorari, the court of appeals reversed the finding

---

[2]As noted above, the settlement agreement between Reis and Care Initiatives required Reis to return the documents produced by Care Initiatives, but allowed Reis to keep payroll records, her personnel file, and her medical and mental health records.

of contempt against both Reis and Stowers. Care Initiatives sought further review.

## II. Scope of Review.

On writ of certiorari, this court's review is at law, and "we may examine only the jurisdiction of the district court and the legality of its actions." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). The district court acts illegally when the court's factual findings lack substantial evidentiary support. *Id.* Since proof beyond a reasonable doubt must be established for a finding of contempt, substantial evidence to support such a finding is " 'such evidence as could convince a rational trier of fact that the alleged contemnor is guilty of contempt beyond a reasonable doubt.' " *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995) (quoting *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744–45 (Iowa 1993)). We review the district court's conclusions of law for errors at law. *State v. Lipcamon*, 483 N.W.2d 605, 606–07 (Iowa 1992). We review a district court's decisions regarding discovery for an abuse of discretion. *Comes v. Microsoft Corp.*, 775 N.W.2d 302, 305 (Iowa 2009). However, we review interpretation of our rules of civil procedure for errors at law. *Hasselman v. Hasselman*, 596 N.W.2d 541, 543 (Iowa 1999).

## III. Merits.

**A. Jurisdiction.** Stowers and Reis challenge the district court's jurisdiction on essentially two grounds. First, they challenge the court's jurisdiction to hold the parties in contempt based on the protective order. Second, they challenge the court's jurisdiction to hold the parties in contempt based on the settlement agreement.

Stowers and Reis argue the district court lacked jurisdiction to enforce the protective order because the case pending before the district court had already been dismissed and the protective order did not

stipulate that the parties would continue to be subject to the court's jurisdiction to enforce the order after dismissal of the case.

We find the district court did not err in holding it had jurisdiction to enforce the protective order. Generally, a district court's jurisdiction ends with dismissal of the pending case. *See Horrabin v. City of Iowa City*, 160 Iowa 650, 656–57, 142 N.W. 212, 213 (1913) (supplemental opinion) (" 'But the case, as we have seen, is ended. The injunction proceedings must end with the case. . . . This court will not determine questions unless there be pending cases in which the questions arise.' " (quoting *Chicago, R.I. & P. Ry. v. Dey*, 76 Iowa 278, 280, 41 N.W. 17, 18, (1888))). Courts do retain jurisdiction to enforce those orders that remain in effect. "It is axiomatic that the power of a court to enforce its orders, in the absence of a stay, is essential to the discharge of its duties." *Shedlock v. Iowa Dist. Ct.*, 534 N.W.2d 656, 658–59 (Iowa 1995) (holding court had authority to enforce protective order even though merits of case were on appeal); *cf. LaRue v. Burns*, 268 N.W.2d 639, 642 (Iowa 1978) (the court has inherent power to punish disobedience to its orders).

Other jurisdictions have held courts retain the authority to enforce protective orders. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."); *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782 (1st Cir. 1988) ("We note that the courts and commentators seem unanimous in finding such an inherent power to modify discovery-related protective orders, even after judgment, when circumstances justify."); *Factory Mut. Ins. Co. v. Insteel Indus., Inc.*, 212 F.R.D. 301, 303 (M.D.N.C. 2002) ("A final judgment or stipulation of

dismissal does not diminish the district court judge's right to lift or to modify such orders.").

Reis and Stowers correctly note that courts may not enforce orders which are no longer in effect. *See United Nuclear*, 905 F.2d at 1427 ("As long as a protective order *remains in effect* . . . ." (Emphasis added.)). Reis and Stowers argue the protective order at issue did not remain in effect after dismissal. The protective order contains no terms addressing its continued effect or how parties are to treat documents after a dismissal or entry of judgment. The protective order does not state it will continue beyond dismissal or that all obligations cease with dismissal of the case. The language of the protective order does, however, indicate the intent of the parties and the court that the protective order continue past resolution of the merits. Paragraph five of the protective order provides that those accessing documents

> shall not use or disclose such documents or information for purposes of business or competition, or for any purpose other than the preparation for and the conducting of this proceeding, or any appellate review thereof, and then solely as contemplated herein, and shall keep the documents and information secure and confidential in accordance with the purposes and intent of this Stipulation and Protective Order.

The protective order imposed a blanket requirement that confidential documents not be used or disclosed. The order limits authorized use and disclosure to a specific purpose—this litigation—and does not lift this limitation after termination of the litigation. The limitation on use of these documents to the "preparation for and the conducting of this proceeding" would be meaningless were the protective order to expire upon dismissal or judgment. To the contrary, there is no permissive use for the documents after dismissal. The reasons behind protective orders—for example, to "protect valuable business information and trade secrets from disclosure to competitors,"—continue past dismissal.

*Comes*, 775 N.W.2d at 311; *see also Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("In most cases, the lubricating effects of the protective order on pre-trial discovery would be lost if the order expired at the end of the case . . . ."); *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 501 (S.D. Ohio 2002) ("If the parties were free to disclose confidential information upon dismissal of a case, protective orders would cease to fulfill their intended purpose which is to encourage full disclosure of all relevant information.").

With regard to the settlement agreement, Stowers and Reis argue the agreement was never entered by the court, and because the underlying case has been dismissed, the settlement agreement cannot be enforced except in a separate contract action. Care Initiatives does not appear to contest this assertion, instead arguing any reference to the settlement agreement in the district court order was not prejudicial because the reference was unnecessary to the district court's conclusion regarding the protective order and did not form the basis for any remedies or damages.[3] A confidential settlement agreement is a contract entered into by the parties in which one party agreed to dismiss the suit. *See Phipps v. Winneshiek County*, 593 N.W.2d 143, 146 (Iowa 1999) ("[S]ettlement agreements are essentially contractual in nature."). We agree the district court lacked jurisdiction in this circumstance to enforce the settlement agreement unless a separate action for breach of contract was filed. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381, 114 S. Ct. 1673, 1677, 128 L. Ed. 2d 391, 397 (1994) (holding there was no basis to enforce settlement agreement after case had been dismissed without entering or referencing the settlement

---

[3]We will address the merits of the district court order and the effect of references to the settlement agreement below.

agreement[4]); *cf. Gilbride v. Trunnelle*, 620 N.W.2d 244, 249 (Iowa 2000) ("The district court has authority to enforce settlement agreements made in a pending case . . . on motion by one of the parties when, as here, a party amends his or her pleadings to assert settlement as an additional claim in the original lawsuit.").

**B.  Contempt.**   The district court held Reis and Stowers in contempt.   Iowa Code section 665.2 lists the actions constituting contempt, including "[i]llegal resistance to any order."   Iowa Code § 665.2(3) (2007).   Resistance to or violation of an order cannot be considered contempt of court unless it is willful.  *In re Inspection of Titan Tire*, 637 N.W.2d 115, 132 (Iowa 2001).  To support a finding of willful disobedience, the court must find

> "conduct that is intentional and deliberate with a bad or evil
> purpose, or wanton and in disregard of the rights of others,
> or contrary to a known duty, or unauthorized, coupled with
> an unconcern whether the contemner had the right or not."

*Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140 (Iowa 1988) (quoting *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980), *overruled on other grounds by Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 707–09 (Iowa 1986)).

In Iowa, all actions for contempt are quasi-criminal, even when they arise from civil cases.  *See Zimmermann v. Iowa Dist. Ct.*, 480 N.W.2d 70, 74 (Iowa 1992).  Therefore, contempt must be established by proof beyond a reasonable doubt.  *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007).  The district court's factual findings will be overturned if they lack substantial evidentiary support, which is " 'such evidence as could convince a rational trier of fact.' "  *In re Marriage of Jacobo*, 526 N.W.2d at 866 (quoting *Ervin*, 495 N.W.2d at 744–45).

---

[4]Although federal courts are of limited jurisdiction, *Kokkonen*, 511 U.S. at 377, 114 S. Ct. at 1675, 128 L. Ed. 2d at 395, and Iowa courts are of general jurisdiction, *see* Iowa Code § 602.6101 (2007), the analysis of unentered settlement agreements as separate contract actions is applicable.

1. *Stowers—"Use" of documents.* Stowers admits he signed the undertaking to be bound by the protective order. The district court held Stowers in contempt for facilitating Reis's failure to return documents and threatening to use knowledge gained from the documents against Care Initiatives' employees, agents, or attorneys, thereby using the documents for purposes other than the litigation. The district court lacked jurisdiction to enforce the settlement agreement, which contained Reis's obligation to return documents. Therefore, we do not consider Stowers's alleged facilitation of Reis's failure to return documents as a basis for contempt. We limit our discussion to whether Stowers "used" confidential documents in violation of the protective order.

Stowers argues the district court lacked substantial evidence to find he violated the protective order. He argues he did not "use" or "disclose" the confidential documents because the emails sent to Care Initiatives' CFO and board member do not reference the documents or Reis's possession of the documents.

On January 21, 2008, Fiedler & Newkirk informed counsel to Care Initiatives by letter that all documents were in the possession of Reis and that future communication regarding the documents should be directed to Reis or Stowers. Reis and Stowers were copied on this letter. Care Initiatives entered three emails sent by Stowers into evidence as support for finding Stowers "used" the documents in violation of the protective order.

First, on February 12, 2008, Stowers initiated his campaign against Care Initiatives and sent an email to Care Initiatives' CFO George Michael McDaniel. This email stated McDaniel's "time has arrived" and that "[b]ased upon information known and that disclosed publicly . . . you are being afforded the opportunity to quietly tender your resignation from all positions held with Care Initiatives." The email urged McDaniel

to provide a copy of his resignation to Stowers if he "wish[ed] to take advantage of this limited opportunity" and included a deadline of 4:00 p.m. the following day.

Second, on February 13, 2008, Stowers struck out at Care Initiatives' board member Richard Thornton. This email began by stating "[y]our options have narrowed substantially in the past two months." The email stated "[n]obody wants to completely humiliate and embarrass you, but you have a way of placing yourself in positions where that cannot be avoided and you essentially do it to yourself." The email gave Thornton,

> the chance to resolve your dilemma without as much trauma to you as would occur if you do not accept the proposal I am about to make. So, here it is—
>
> 1. You will make a personal cash donation to a charitable cause in the name of Jan Reis selected by Jan Reis and myself in an amount equal to all payments that you have received from Care Initiatives from August 2005 to the present; and
>
> 2. You will immediately resign from the Board of Care Initiatives and sever all ties to Care Initiatives.

On February 14, 2008, after these first two emails were sent, counsel for Care Initiatives sent Stowers and Reis a letter demanding return of the confidential documents exchanged during the suit. Stowers sent his third email to Armentrout, counsel for Care Initiatives, on February 17, 2008. This email asserted

> I don't think that I could be comfortable turning the information over unless it was clear that Care Initiatives had cleaned house and that the same actors were no longer in a position to repeat and carry on their misconduct.

Stowers claimed his reluctance to turn over the documents was based on a concern of "anticipated destruction and concealment." The

email ended by stating, "I think you should know this is not a simple issue of returning documents."

Stowers argues threatening public humiliation, demanding resignations, and extracting money payments to a charity in his wife's name cannot support a finding beyond a reasonable doubt that he "used" the documents produced under the protective order. Under the protective order, Stowers agreed with respect to "any documents or information subject to this Stipulation and Protective Order" that he would not "use . . . such documents or information . . . for any purpose other than the preparation for and the conducting of this proceeding, or any appellate review thereof." Stowers claims he did not "use" the documents because his reference to "information known and that disclosed publicly" in the email to McDaniel was not meant to allude to the documents from the lawsuit but instead to nonconfidential information learned through other means.

The emails, when viewed together, provide substantial evidence to support the district court's determination beyond a reasonable doubt that Stowers violated the protective order through "use" of the documents. Less than a month before Stowers sent the three emails at issue, Reis and Stowers's trial counsel informed Care Initiatives by letter that they no longer represented Reis and Stowers, all documents had been transferred to Reis, and communications regarding these documents should be directed to Reis or Stowers. Reis and Stowers were copied on this letter to Care Initiatives. Stowers was aware Care Initiatives had been informed that Reis was in possession of the documents and that he could be contacted about those documents. Stowers's first two emails contain threats that Stowers will take some course of action should the CFO and board member not meet his demands. His third email, to attorney Armentrout, explicitly references

his unwillingness to return the documents at issue and insists he would not "be comfortable turning the information over unless it was clear that Care Initiatives had cleaned house." These emails were meant to suggest Stowers had the ability to make details in the documents or the documents themselves public if the CFO and board member did not agree to his demands, including resigning. This enthusiastic use of the documents was prohibited by the protective order.

Stowers suggests his emails cannot violate the protective order because he was simply alerting Care Initiatives that he might be required to report illegal behavior discovered during the course of the lawsuit. The right or duty of a litigant or lawyer to report illegal behavior to the proper authorities if it is discovered during the course of a civil proceeding is not before this court. Stowers was bound by the protective order which prevented use or disclosure of the documents. The protective order allowed modification, and if Stowers was concerned about his ethical or legal duties, he could have moved to modify the protective order to allow disclosure of documents to the proper authorities. *Cf. Comes*, 775 N.W.2d at 313 (modifying protective order after parties agreed to settle the case); *Poliquin*, 989 F.2d at 535 ("[A] protective order . . . is always subject to the inherent power of the district court to relax or terminate the order, even after judgment. This retained power in the court . . . provides a safety valve for public interest concerns, changed circumstances or any other basis that may reasonably be offered for later adjustment." (Citation omitted.)). The protective order also allowed the parties to contest designation of documents as confidential. If Stowers believed documents were improperly designated as confidential, he should have timely petitioned

the court for a determination.[5]  Instead, Stowers sent emails seeking resignations and charitable donations in his wife's name and implied these actions would be in exchange for not going to the authorities.

Stowers further argues the produced documents were not the property of Care Initiatives, and Iowa law recognizes that discovery may be used in other forums.  This court has recently ordered that discovery documents be produced to an intervening party for potential use in a similar suit.  *Comes*, 775 N.W.2d at 313.  The protective order at issue in *Comes*, just like the one here, prohibited the parties from disclosing the documents or using the documents for purposes other than the Iowa litigation.  *Id.* at 304.  This court ordered modification of the protective order to allow use of the litigation documents in a similar lawsuit.  *Id.* at 313.  While Stowers is correct that, under proper circumstances, a court might order discovery to be disclosed for use in another suit, such use would require modification of the protective order and a court order.  *Comes* demonstrates the proper avenues to pursue when confidential documents are necessary in separate litigation.

When the emails to the CFO and board member are considered in combination with the letter from Fiedler & Newkirk, informing Care Initiatives that Reis or Stowers were to be contacted about the documents, and Stowers's email to Armentrout, which essentially refuses to return the documents, it is clear Stowers was "using" the documents to gain a tactical advantage over Care Initiatives.  Stowers emails "used" the documents in an attempt to exert influence and pressure on a Care Initiatives' CFO, board member, and attorney.  The district court's

---

[5]Stowers filed a motion to remove the confidential designation and to terminate protective order on March 24, 2008, a month after Care Initiatives filed their motion for contempt on February 25, 2008, and over a month after Stowers sent emails to Care Initiatives' CFO, board member, and attorney threatening public use of the documents.

determination holding Stowers in contempt of the protective order is affirmed.

2. *Reis.* The district court held Reis in contempt because it found she refused to return Care Initiatives' documents while allowing Stowers to use the documents to make threats to Care Initiatives' agents and employees. Reis argues the district court's decision holding her in contempt lacked substantial evidentiary support because there was no evidence Reis "used" the documents for purposes other than the litigation or that she "disclosed" the confidential documents. Reis notes the protective order did not specify how documents were to be handled after dismissal and that reasonable interpretations could include return to the producing party, destruction, or confidential maintenance. Reis argues the district court improperly relied on the settlement agreement, which contained a provision for return of the documents.

We agree the district court lacked substantial evidence to hold Reis in contempt beyond a reasonable doubt. There is no evidence Reis used or disclosed the documents inappropriately. Reis's uncontradicted testimony was that she was reviewing the documents to assure that none of her personal medical records were contained in the files before they were returned to Care Initiatives. The protective order cannot be read to prohibit such review, particularly where Reis was expressly granted permission to review confidential documents under the terms of the protective order. The district court appears to have relied on Reis's obligation to return documents under the settlement agreement; however, as noted above, the district court did not have authority to enforce the settlement agreement.

The district court also relied upon an assumption that Reis was aware her husband, Stowers, sent emails to Care Initiatives' CFO and board member and therefore facilitated Stowers's use of the documents.

Reis was copied only on Stowers's third email, which was sent to Care Initiatives' counsel Randall Armentrout and suggested the documents could not be returned because they might be destroyed. Reis was not copied on the emails to Care Initiatives' CFO and board member urging them to resign or make donations in Reis's name. Although Reis is married to Stowers, there has been no showing she participated in or was even aware of the emails sent to Care Initiatives' CFO and board member. While the email to Armentrout should have raised some red flags to Reis, it is not enough to impute a willful violation of the protective order beyond a reasonable doubt. There is no testimony to suggest Reis had the proper context to understand the email as a continuation of the threats made to Care Initiatives' CFO and board member. The contempt order entered against Reis is therefore discharged.

**C. Unadmitted Exhibit.** In its contempt ruling, the district court referenced documents that Care Initiatives apparently originally marked as exhibit L in a filing and which the district court appears to have later referenced as L-2. Because of disagreements regarding the confidential nature of portions of original exhibit L, the complete exhibit was not entered into evidence during the hearing, and instead, only specific pages were designated and entered. The two pages entered into evidence were current exhibit L, the email from Stowers to McDaniel, and current exhibit L-2, the email from Stowers to Thornton. The complete exhibit L is not in the record before this court because the district court—with agreement from both parties—struck from the record those portions that were never admitted. The district court contempt order references those portions of original exhibit L which were not formally admitted and are no longer contained in the record.

This court has considered the record absent any unadmitted portions of exhibits. The district court did not rely heavily on the missing portions of original exhibit L. We find that regardless of whether the court erred by referencing an exhibit not formally entered at the contempt hearing, the passing reference to the unadmitted portions was harmless. *See State v. Hensley,* 534 N.W.2d 379, 383 (Iowa 1995) (a court may find harmless error where the properly admitted evidence assures that the outcome would have been the same without the improperly admitted evidence).

**D. Remedy.**

1. *Attorneys fees.* The district court ordered Reis and Stowers to: (1) pay Fiedler & Newkirk for all reasonable attorney's fees and expenses incurred in the post settlement actions, (2) pay all charges for storage of the records, and (3) "pay all reasonable attorney's fees and expenses incurred by the attorneys for Care Initiatives in their efforts to secure and obtain return of the documents produced pursuant to the Protective Order and which were to be returned pursuant to the Settlement Agreement." The district court did not determine the specific amount of the award prior to this writ of certiorari.

Reis and Stowers argue attorney's fees are not a proper remedy for a holding of contempt under the Iowa statutes governing contempt. They argue remedies are limited to those available under chapter 665, which are a fine of up to $500 or jail or both. Iowa Code § 665.4(2). This court has previously explained that although an Iowa court's contempt power is inherent, *see Lutz,* 297 N.W.2d at 354, a statute limiting punishment for contempt is valid. *See Wilson v. Fenton,* 312 N.W.2d 524, 528 (Iowa 1981), *overruled on other grounds by Ervin,* 495 N.W.2d at 745. Iowa courts may only impose punishment for contempt in the form provided by Iowa Code section 665.4. Section 665.4 provides for two types of

punishment: punitive punishment for acts which are completed contempts and imprisonment to coerce the performance of acts ordered by the court. *Id.* The fine authorized by section 665.4 is for the benefit of the state. *Id.*

Care Initiatives argues in response that the district court based its order of attorneys fees on Iowa Rules of Civil Procedure 1.517(2)(*b*)(5) and 1.602(5). Rule 1.517 pertains to discovery and lists sanctions available to a court in which an action is pending for "a party" who "fails to obey an order to provide or permit discovery." Iowa R. Civ. P. 1.517(2)(*b*). The rule provides that a court's order regarding such failure may include "an order treating as a contempt of court the failure to obey any orders," and an order requiring the "disobedient party or the attorney advising such party or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Iowa R. Civ. P. 1.517(2)(*b*)(4)–(5). Rule 1.517(2)(*b*)(4)–(5) specifically provides that a court may enter any of the sanctions provided "in addition thereto" the other sanctions in the list. Rule 1.602 provides discretion for trial courts to hold pretrial conferences and enter pretrial orders. The rule also provides for the sanction of "reasonable expenses . . . including attorney's fees" if "a party or party's attorney fails to obey a scheduling or pretrial order." Iowa R. Civ. P. 1.602(5).

The district court specifically based its order of fees on its authority under rules 1.517(2)(*b*)(5) and 1.602(5). A protective order is an "order to provide or permit discovery" under rule 1.517(2)(*b*), which authorizes sanctions for failure to obey such orders. It is also a "pretrial order" under rule 1.602(5). Both rules allow sanctions to be levied against a party or a party's attorney. A party's attorney may be sanctioned, even if the attorney's client took no steps to violate the discovery rules, when it is the attorney's conduct which violated a court

order. *See Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 242 (Iowa 1988) (noting rule 1.517—then rule 134—mirrors federal rule 37 and cases under rule 37 are persuasive authority); *Whitehead v. Gateway Chevrolet, Oldsmobile*, No. 03-C-5684, 2004 WL 1459478, at *1, 3 (N.D. Ill. June 29, 2004) (imposing sanction of attorneys' fees under Rule 37(b) on attorney who used confidential information from a previous case, in violation of a protective order, to file the complaint in the instant case); *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 31–32 (D. Me. 1994) (sanctioning attorney under rule 37(b), including the potential for reasonable attorneys' fees to be set at a later date, when attorney disclosed an affidavit protected by a protective order to co-counsel in a separate case).

The district court had authority to sanction Stowers as either a party or a party's attorney. The protective order, to which Stowers signed an undertaking to be bound, specifically lists Stowers as a party. It states, "Parties: Jan Reis and her spouse . . . ." Additionally, there was sufficient evidence supporting the district court's finding that Stowers acted as an attorney to Reis during the litigation. An attorney-client relationship exists when: " '(1) a person sought advice or assistance from an attorney, (2) the advice or assistance sought pertained to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance.' " *State v. Parker*, 747 N.W.2d 196, 203–04 (Iowa 2008) (quoting *Comm. on Prof'l Ethics & Conduct v. Wunschel*, 461 N.W.2d 840, 845 (Iowa 1990)). Although Reis denied during the contempt hearing that Stowers had acted as her attorney, she also admitted that she talked to him about legal matters and relied on him to help her interpret things. Newkirk, Reis's attorney during the pending litigation, testified that Fiedler & Newkirk had taken the position that Stowers was acting as an

attorney for Ms. Reis. Additionally, Stowers sent emails to Fiedler & Newkirk on Reis's behalf demanding return of her files and case materials and citing case law. When Armentrout, Care Initiatives' attorney, sent a letter to Reis and Stowers demanding return of its documents, Stowers responded, noting that Armentrout's letter "poses a number of legal and ethical issues."

The district court did not err in determining an award of fees was within the remedies available. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (finding insufficient evidence for criminal contempt but ordering reasonable attorneys fees for violation of protective order under federal rule 37); *Kehm v. Procter & Gamble Mfg. Co.*, 580 F. Supp. 913, 915–16 (N.D. Iowa 1983) (ordering reasonable attorneys fees and costs under federal rule 37 for violation of protective order where attorney sold confidential documents after entry of judgment). Although the district court did not have authority to order fees as a sanction for contempt because of the limits imposed by section 665.4, the district court was allowed to impose fees pursuant to rules 1.517(2)(*b*)(5) and 1.602(5).

Although we affirm the availability of reasonable expenses and fees as sanctions, we limit portions of the district court's order based on our holding above. First, because we vacate the order of contempt as it applies to Reis, we also vacate the order that Reis be jointly responsible for costs and fees. Second, the award for fees may not extend to the unsuccessful efforts by Care Initiatives to hold individuals other than Stowers in contempt, including Reis, Fiedler, and Newkirk. Third, we vacate the order requiring Stowers to pay the attorneys' fees and expenses incurred by Fiedler & Newkirk in defending the contempt action brought against Fiedler and Newkirk. The decision to file a nonmeritorious contempt action against Fiedler and Newkirk was made

by Care Initiatives, and it is improper to require Stowers to pay the fees and expenses incurred by their firm. Fourth, consistent with our decision above, we limit the reasonable fees or expenses to Care Initiatives' efforts relating to enforcement of the protective order. The district court's jurisdiction did not extend to the settlement agreement, and, therefore, the award of fees may not extend to expenses relating to the settlement agreement.

We hold it was not an abuse of discretion for the district court to order that Stowers be responsible for the costs of storage of the documents secured by the court and the reasonable fees of Care Initiatives in their effort to hold Stowers in contempt under the protective order. The determination of the monetary amount of reasonable fees is within the district court's discretion. *See Kendall/Hunt*, 424 N.W.2d at 242. Sanctions under rule 1.517 (previously rule 134) should serve a three-fold purpose: (1) to insure that a party will not profit from its failure to comply with a court order, (2) to provide specific deterrence and seek compliance with the court's order, and (3) to provide general deterrence in the active case and in litigation generally. *Id.* We remand to the district court for implementation of the reasonable fee award within the limitations we have outlined above.

2. *Injunctive relief.* The district court ordered that the protective order continues to cover confidential information and documents gained through this litigation, and that any use of such information or documents is prohibited without further order of the court. Reis and Stowers argue the district court's order amounts to inappropriate injunctive relief. We disagree. As noted above, the district court retained authority to enforce the protective order. Courts have routinely held that this authority also includes the authority to modify or lift such orders. *See, e.g., United Nuclear*, 905 F.2d at 1427 ("As long as a protective order

remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."); *see also Pub. Citizen*, 858 F.2d at 783 ("In sum, although the court lacked power to impose new discovery-related obligations after dismissing the case on the merits, we find that, because the protective order was still in effect, the district court had the power to make postjudgment modifications to the protective order in light of changed circumstances."). As we held above, the protective order continued in effect and parties were required to move for modification before using or disclosing documents designated confidential in the underlying suit. The district court's order merely clarified the continuing effect of the protective order and was an appropriate remedy.

**IV.   Conclusion.**

The district court had jurisdiction to enforce the protective order entered during discovery in this case but did not have jurisdiction to enforce a settlement agreement that was never entered by the court. The district court's determination that Stowers be held in contempt of court for violation of the protective order is supported by substantial evidence. The district court's determination that Reis be held in contempt of court for violation of the protective order is not supported by substantial evidence, and it was erroneous for the court to rely on the settlement agreement to hold Reis in contempt. We uphold the district court's authority to order fees, but limit the scope of the award. We remand this case to the district court for entry of an order and remedies consistent with this decision.

**DECISION OF COURT OF APPEALS VACATED; WRIT SUSTAINED IN PART AND ANNULLED IN PART; AND CASE REMANDED.**