# IN THE COURT OF APPEALS OF IOWA

No. 15-1744
Filed October 12, 2016

**CHRISTOPHER WADE MORITZ,**
    Plaintiff-Appellant,

**vs.**

**IOWA DISTRICT COURT FOR POLK COUNTY,**
    Defendant-Appellee.
_____

Certiorari to the Iowa District Court for Polk County, Robert A. Hutchison,

Judge.

A father appeals the district court's contempt finding and thirty-day jail

term for his willful violation of a child support order.  **WRIT ANNULLED.**

Jamie L. Hunter of Dickey & Campbell Law Firm, P.L.C., Des Moines, for

appellant.

Amanda L. Green of Nading Law Firm, Ankeny, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

The November 2014 decree dissolving the marriage of Christopher Moritz and Jessica Koenig ordered Moritz to pay $417 per month in support for their three children. By May 2015, his child support obligation was $3236 in arrears. In response to Koenig's application, the district court found Moritz in contempt of the child support order and imposed a sanction of thirty days in jail. Moritz now challenges the contempt finding and punishment.

A party who willfully disobeys a dissolution decree may be cited and punished for contempt. Iowa Code § 598.23(1) (2015). Because substantial evidence supports the district court's finding Moritz willfully violated the support order and because ordering the jail sentence was not an abuse of the court's discretion, we affirm and annul the writ.

Iowa courts treat contempt actions much like criminal proceedings. *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140 (Iowa 1988). For instance, a person may not be punished for contempt unless the contemnee establishes the contemner's [Moritz's] disobedience by proof beyond a reasonable doubt. *See Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 708-09 (Iowa 1986). A finding of contempt is appropriate if the violation of a court order was willful. *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). Willfulness can be shown by evidence of conduct that is (1) intentional and deliberate with a bad or evil purpose; (2) wanton and in disregard of the rights of others; (3) contrary to a known duty; or (4) unauthorized, coupled with an unconcern whether the contemner had the right or not. *Id.* (citation omitted).

We review this certiorari action for correction of legal error. *See Spitz v. Iowa Dist. Ct.*, 881 N.W.2d 456, 464 (Iowa 2016). We may examine only the district court's jurisdiction and the legality of its actions. *See Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 66 (Iowa 2010). The district court acts illegally when its factual findings lack substantial evidentiary support. *Id.* Substantial evidence is the quantity and quality of proof that could persuade a rational trier of fact that the alleged contemner is guilty of contempt beyond a reasonable doubt. *Id.* We review the district court's decision to impose the thirty-day term of incarceration authorized by section 598.23(1) for an abuse of discretion. *See Ickowitz v. Iowa Dist. Ct.*, 452 N.W.2d 446, 452 (Iowa 1990).

In the dissolution decree, the court found "Christopher has been able to provide financial support for the family through his 'work' associated with his invention skills and payments from his father via a family-owned corporation by way of advancements or loans." The decretal court determined Moritz's income should be imputed at $20,000 annually, noting Moritz "averaged minimally $13,000 on his income tax returns for the last three calendar years." The court determined: "There is no reason to believe that he cannot continue to earn such an amount annually and that his father will not continue to contribute at least $7000 annually." Koenig, who was awarded physical care of the children, earned $11,500 per year. Based on these incomes, the court used the child support guidelines to calculate Moritz's obligation as $417 per month for the three children.[1]

---

[1] The decree also ordered him to pay thirty-three dollars per month for cash medical support.

While Moritz acknowledges he has not met his full child support obligation, he claims Koenig offered insufficient evidence to show his violation was willful. His argument focuses on his alleged inability to pay the entire amount of support ordered. "Where, as here, violation of a court order is shown, so that the question turns on willfulness, the burden shifts to the alleged contemner." *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 745 (Iowa 1993). The burden is one of production. *Id.* Moritz must show he lacks the ability to pay. The burden of persuasion remains with contemnee, here Koenig. *See id.*

Moritz points out he reached an agreement with the Child Support Recovery Unit (CSRU), whereby he would pay fifty dollars per month beginning in March 2015 to avoid the suspension of his driver's license based on delinquent child support payments. The record shows Moritz made those monthly payments from March through September 2015, though not always in a timely fashion. Moritz acknowledged his agreement with CSRU did not change the court-ordered support amount.

At the contempt hearing, Moritz provided somewhat confusing testimony regarding his income and earning capacity. Moritz said he was unable to obtain a job to pay his support obligation because of his five felony convictions. Moritz testified he had applied for two temporary positions since November 2014, but he was unable to recall the names of the companies or provide further documentation of his job hunt. He also discussed his chronic back problems and the medication he takes for attention deficit disorder but said he had not obtained a disability rating from the Social Security Administration. Moritz testified he spent his time doing "research and development" on a wind turbine project that

was not an income source now, but "the payoff later could be great if the research and everything comes out right."

Moritz told the court he was not capable of earning the amount imputed in the decree—"that's not what I make . . . basically it's, like, an imaginary number that I can't build up to." He testified $20,000 was "nearly double of what I do get" and "I don't get as much money as I used to get before the decree from my parents." As for the expense side of the ledger, Moritz testified he was going through chapter 13 bankruptcy and made monthly payments of $757 so that he did not "lose the house." Moritz testified he paid all of his bills with his father's credit card, but his father would not allow him to use the card for alcohol, tobacco, or child support. Moritz claimed his father believed it was unfair that the dissolution court did not order joint physical care of the parties' children, so his father would not contribute to his child support obligation. Moritz stated his family would have been willing to provide financial assistance if the court had awarded him shared care.

The district court clarified for Moritz that the issue was not the physical care arrangement: "And your parents' unhappiness with that, and they're not going to help you as long as you don't get shared physical care. That's not the way this works." The court focused on Moritz's own ability to pay, telling him:

> You're going to do everything you can to avoid paying what the court's ordered you to pay, and you're going to continue to tell the court that you just can't do it. You can't find work. And you're pursuing this pipe dream which results in virtually no support for your children. You really think they can live on $50 a month?

The district court gave little credence to Moritz's excuses for being unable to meet his child support obligations, commenting: "Too disabled to work, but not

6

disabled enough to get Social Security; is that about the size of it?" The court also told Moritz: "[T]here's a flaw in your analysis. You're telling me you can support them if the kids were with you, right?" The court ultimately determined: "You're not going to follow what the court tells you to do. That's just clear to me." The court referenced other options "to try to actually get money in her hands" but concluded the options were not going to work. The court concluded, "so the only option I really have left is to punish you for being in violation of the court order."

The district court rejected Moritz's financial-hardship defense. Deferring to the credibility findings of the judge who had the chance to see and hear the live testimony, we conclude Moritz has not carried his burden of production on the question of his ability to pay. *See In re Hawk*, No. 99-0783, 2000 WL 504586, at *3 (Iowa Ct. App. 2000) (deferring to district court's conclusion ex-wife chose to be unemployed). Moritz is in his early forties, and while he has certain health issues, he did not establish those conditions were so debilitating he could not secure employment. Both before and after the decree, his primary source of income was an allowance or series of "loans" from his parents. The question of willfulness hinges on how he chooses to allocate that income. As Koenig's attorney pointed out at the sentencing hearing, when Moritz faced a contempt sanction based on his failure to pay temporary support in the summer of 2014, "as soon as he was sentenced to jail, the money appeared, and it was paid immediately." On this record, we find substantial evidence to support the finding of willfulness.

Turning to the propriety of the punishment, Moritz argues the district court should have rejected the option of jail time and instead ordered income

withholding or another sanction allowed by statute. *See* Iowa Code §§ 598.23(2), .23A. At the contempt sentencing hearing, Moritz's counsel stated: "I understand that Mr. Moritz, given what the court has ruled, needs to be shown that this is an important obligation he needs to meet." Counsel suggested suspending the sentence "as a reminder" that if he didn't make any effort going forward he would go to jail.

Our supreme court recognized the tough decision faced by district courts in this situation:

> In contempt cases involving a failure to pay child support under dissolution of marriage decrees, the court will frequently be faced with a difficult balancing process in fixing punishment under section 598.23(1). It must balance the desirability of an otherwise deserved jail sentence against the potential negative effect that jail sentence will have on the contemner's willingness and ability to pay both past and future support. Occasionally, this balancing process will lead to the conclusion that a jail sentence is required unless the contemner does in fact pay a fixed sum of money within a specified period of time.

*Ickowitz*, 452 N.W.2d at 450.

Here, the district court considered other options for making an impression on Moritz but determined the only way to motivate Moritz to comply with the support order (that is to "get money" in Koenig's hands for their children's support) was to impose a punishment of thirty days in jail. "[C]oercive remedial motives may underlie otherwise punitive sentences imposed under section 598.23(1)." *Id.* We find no abuse of discretion in the district court's contempt sentence.

We decline Koenig's request for appellate attorney fees.

**WRIT ANNULLED.**