**Donald P. ERVIN and Midwest Research and Recycling, Inc., Plaintiffs,**

v.

**IOWA DISTRICT COURT FOR WEBSTER COUNTY, Defendant.**

**No. 91–1984.**

Supreme Court of Iowa.

Feb. 17, 1993.

C. Joseph Coleman, Jr. of Mitchell, Coleman, Perkins & Enke, Fort Dodge, for plaintiffs.

Bonnie J. Campbell, Atty. Gen., and David R. Sheridan and David L. Dorff, Asst. Attys. Gen., for defendant.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

Plaintiff in this original certiorari proceeding challenges an order punishing him for contempt. It is an environmental matter. Plaintiff, and his corporation, undertook to restore and recycle waste tires. The enterprise came under challenge by the Iowa attorney general for violation of the solid waste disposal statutes in Iowa Code chapter 455B (1991) and regulations promulgated by the Iowa department of natural resources. After the plaintiff failed to comply with a court-ordered cleanup of his premises, he was found in contempt. Because we agree he was in contempt, and that the prescribed punishment was appropriate, we annul the writ.

Plaintiff Donald Ervin (Ervin) founded Midwest Research and Recycling, Inc. (Midwest)[1] for the purpose of developing and operating a tire reclamation plant in Webster County. He sought to develop a process to decompose tires.

The attorney general brought this suit against Ervin, seeking civil penalties and injunctive relief. Fire lanes were demanded as a part of the relief sought. Due to Ervin's vast accumulation of tires, the attorney general later filed an application for temporary injunction, requesting that Ervin be prohibited from accumulating any

1. Ervin and Midwest will, for the most part, be referred to simply as Ervin.

more tires at the dump and be required to install fire lanes in accordance with the terms of his solid waste disposal permit issued by the department of natural resources (hereinafter DNR). At the time of the application, the DNR estimated there were more than 800,000 tires at the site—twenty times the 40,000 authorized by Ervin's permit. Other estimates place the number of tires at or near 2,000,000. Following hearing before the district court, Judge Ronald H. Schechtman issued an order enjoining Ervin from accumulating any more tires and ordering the installation of fire lanes at the site within ten days. There is no contention of further accumulation; the dispute became centered upon the requirement to install fire lanes by removing or relocating tires.

The fire lanes were to be constructed in accordance with the engineering plans submitted to DNR by Ervin, and made a part of the DNR permit. The injunctive order recognized it might not be possible to install all required lanes within ten days of the order. The district court therefore stated it would allow a temporary deviation from the exact places and dimensions prescribed, but only with consent of the DNR and a local fire department. Within six or seven days of the court's order, counsel for Ervin approached the attorney general's office concerning a plan. After consulting with the DNR and local fire department, the attorney general's office responded with a plan mapping out what the DNR and the fire department considered a realistic course of action over the next seventeen days.

Ervin failed to install any fire lanes. On the basis of this failure, the State filed a contempt application. At the hearing Ervin admitted he had not installed the fire lanes. His sole defense for noncompliance was claimed "technical and financial" impossibility. Ervin and his witnesses testified concerning Ervin's and Midwest's financial condition. Evidence was also offered concerning Ervin's physical condition. It was said that Ervin's back problems prevented him from moving any tires himself.

Following hearing, Judge Mark S. Cady entered the challenged order, finding Ervin in contempt. The court found Ervin's failure to comply with his court-imposed duty to construct fire lanes was willful and that he failed in his efforts to show otherwise. Ervin was sentenced to six months in jail, with the provision that he be released after twenty days and given an opportunity to purge himself of the contempt. Failure to begin construction of the fire lanes within two days following release would result in incarceration for the remainder of the six-month term.

Ervin then filed the petition for writ of certiorari with us. The writ was granted and the case was transferred to the court of appeals. That court reversed the district court finding of contempt. The matter is before us on further review.

■ I. Contempt can be described as willful disobedience. *Amro v. Iowa Dist. Court*, 429 N.W.2d 135, 140 (Iowa 1988). A finding of willful disobedience

> requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

*Id.* "Contempt is sufficiently shown if some of the default was willful." *Id.* Willfulness is the only issue remaining in this dispute, so the case turns on the sufficiency of evidence regarding Ervin's ability to comply with the order.

■ We apply a special rule in reviewing facts in contempt cases. *State v. Lipcamon*, 483 N.W.2d 605, 606 (Iowa 1992). When a finding of contempt is challenged on appeal, review is not de novo; rather, the court examines the evidence to ensure that proper proof—substantial evidence—supports the judgment of contempt. *Id.* Because of the quasi-criminal nature of the proceeding, the finding of contempt must be established by proof beyond a reasonable doubt. *Phillips v. Iowa Dist. Court*, 380 N.W.2d 706, 708–09 (Iowa 1986). Hence substantial evidence can be described as such evidence as could convince

a rational trier of fact that the alleged contemner is guilty of contempt beyond a reasonable doubt. *See Lipcamon,* 483 N.W.2d at 606; *State v. Robinson,* 288 N.W.2d 337, 339 (Iowa 1980).

■ Where, as here, violation of a court order is shown, so that the question turns on willfulness, the burden shifts to the alleged contemner. Our cases are not consistent on whether the burden then becomes one of production or persuasion. *Compare Skinner v. Ruigh,* 351 N.W.2d 182, 185 (Iowa 1984) ("contemner's burden is a burden of production on the defense of inability to perform the duty rather than a burden of persuasion") *with Wilson v. Fenton,* 312 N.W.2d 524, 527 (Iowa 1981) ("the alleged contemner has the burden of proof on a defense of inability to comply"). The rule in other jurisdictions seems to be in accordance with *Wilson v. Fenton. See* 17 Am.Jur.2d *Contempt* § 161 (1990); 17 C.J.S. *Contempt* § 84(2) (1963).

The tension between these competing views is understandable. Evidence of inability to obey is generally under the control of the alleged contemner, and a failure or refusal to bring it forward should not inure to the benefit of one who has violated a court order. On the other hand, in view of the high stakes in this quasi-criminal proceeding, we think the underlying burden of establishing a crucial ingredient, such as willfulness, should rest with the one bringing the charge. We remain persuaded that the proper burden is the one described in

*Skinner v. Ruigh,* one of production and not of persuasion.

■ Our task, then, is to determine whether the record supports the trial court's determination that the evidence shows beyond a reasonable doubt that Ervin's violation of the court order was willful. We are convinced it does.

■ II. Ervin contends willfulness was not shown because it was physically and financially impossible for him to move the tires so as to leave the required fire lanes. Ervin, and his witnesses, disputed the practicality of opening lanes by stacking tires somewhat higher (from 15' to 16½'). State witnesses testified it was possible to do this, especially with the aid of a conveyor known to be available at the site. It is clear that the State and the trial court were sensitive to the considerable task facing Ervin as a result of his irresponsible conduct. It is also clear from the trial court's ruling that the finding of contempt stood, not on Ervin's failure to complete the fire lanes, but rather on a total failure to attempt to do so.[2] A contemner is not excused from complying, insofar as possible, with a court order because of personal disagreement with its practicality. Such a rule would arm the contemner with de facto power to veto the court order.

Though contradicted by Ervin's showing, the State offered ample evidence to support the trial court's finding that, beyond a reasonable doubt, Ervin's violation was willful.

---

2. The trial court found:
    Ervin has done everything but comply with the court order. He has convinced himself that compliance with the order requires the implementation of a big scheme or plan.... In truth, it only requires him to begin the simple laborious process of removing the tires from specified areas of his property and placing them on existing piles of tires to create fire lanes. He has convinced himself that a greater risk of fire would be created if the existing piles of tires were made higher. However, there was no credible evidence to support this suggestion. Ervin has a "gravel" conveyer on his property. The court can only presume it is on the premises for the purpose of stacking tires. A photograph of the premises supports this presumption. A means exists to comply. Only the will to comply has been absent.

. . . .

    It is important to consider that the court order required affirmative steps, if nothing more than physically moving tires. No direct efforts were made to comply with the order. If Ervin was physically unable to move the tires himself, he had adequate income to hire others to perform the work. He has also received thousands of dollars in business income since the duty was imposed. The work was capable of being performed by hand for minimum wage. The fire lane plan may involve moving tens of thousands of tires, but Ervin must at least begin construction and continue to work towards its conclusion. It is a small price for Ervin to pay for the catastrophic harm that he created.

To be sure, the premises were inundated beyond capacity and Ervin's financial resources were scarce. Evidence nevertheless clearly supports the trial court's conclusion that it was possible for Ervin to begin opening the fire lanes.

We conclude the trial court acted within its authority in its finding of contempt and in the punishment imposed.

DECISION OF COURT OF APPEALS VACATED; WRIT ANNULLED.