# IN THE COURT OF APPEALS OF IOWA

No. 3-1173 / 13-0668
Filed March 12, 2014

IN RE THE MARRIAGE OF RICHARD HERBERS
AND MARY CATHARINE HERBERS

Upon the Petition of
**RICHARD HERBERS,**
    Petitioner-Appellant,

**And Concerning**
**MARY CATHARINE HERBERS,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

A husband appeals the economic provisions of a dissolution decree and challenges a contempt adjudication and disposition. **AFFIRMED AS MODIFIED ON APPEAL; WRIT ANNULLED IN PART, SUSTAINED IN PART, AND REMANDED.**

Christopher M. Soppe, Dubuque, for appellant.

Jennifer A. Clemens-Conlon of Clemens, Walters, Conlon & Meyer, L.L.P., Dubuque, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Potterfield, JJ.

**DANILSON, C.J.**

Richard Herbers appeals economic provisions of the dissolution decree and the ruling on the motion to enlarge and amend. Specifically, he appeals the award of spousal support to Mary Herbers. He also appeals the equalization payment and contends the distribution of assets and liabilities was inequitable. He asks that we modify the court's order disposing of the marital home, requiring Mary to sell the property. We agree a time should be fixed to list the property. Richard also maintains the district court erred in finding him in contempt and ordering him to pay $5325. Mary seeks an award of appellate attorney fees on appeal. Upon our de novo review, we affirm the order of the district court as modified and award Mary attorney fees in the amount of $2000. Regarding Richard's writ of certiorari, we annul it in part, sustain it in part, and remand to the district court for re-imposition of a contempt disposition.

**I. Background Facts and Proceedings.**

Richard and Mary were married in June 1971. Richard filed a petition for dissolution of the marriage on August 22, 2011. During the marriage, the parties had four children. Each had reached majority by the time of the dissolution hearing, which was held December 4, 2012.

At the time of the hearing, Richard was sixty-two years old. He was self-employed in the construction field, as he had been for many years. Richard had recently suffered a heart attack but was apparently otherwise in good health. Recent tax returns showed Richard earned approximately $60,000 a year.

Mary was sixty-one years old at the time of the hearing. She had been a traditional stay-at-home mother during much of the parties' marriage, and she also helped Richard with his construction business. Although she never received a salary, Mary stained and varnished woodwork, ran errands for the business, and aided with the bookkeeping. Since the parties separated, she had found part-time employment with a janitorial company, but she had suffered an injury to her wrist before the hearing, which limited her ability to find work. Mary also wrote a column for a magazine every other month; she is paid $300 for each column.

Following Richard's petition for dissolution, the district court held a hearing regarding temporary spousal support. At that hearing, the court determined Richard was not obligated to pay Mary spousal support during the pendency of the proceedings but did order him to make all mortgage payments, beginning with the November 2011 payment. Mary filed two separate applications for contempt, one in February 2012 and one in October 2012, after Richard failed to make payments as ordered. The court continued hearings on the contempt application until the dissolution hearing.

Mary also filed multiple motions to compel discovery throughout the proceedings. Although the court granted the motions, Richard refused to comply with the orders. Leading up to trial, the district court established deadlines by which Richard was required to provide documents regarding finances and marital property of the parties. He again failed to comply. As a result, Richard was prohibited from presenting evidence concerning the areas of discovery he

violated—specifically expenses related to his business, the values of various equipment used for the business, and documentation concerning gifts or inheritances. He was also prohibited from calling any witnesses as he had failed to file a list of potential witnesses as required.

Following the hearing, the district court issued a dissolution decree. In it, the court ordered Richard to pay Mary alimony in the amount of $1000 a month until he dies, divided the debts and assets of the parties, and ordered Richard to make an equalization payment of $17,224 to Mary. The court also awarded Mary the marital residence, stating she "shall be responsible for placing the home on the market if she is unable to maintain the mortgage." Finally, the court found Richard in contempt for failure to make the mortgage payments and ordered him to pay Mary $5325 as result. Richard appeals.

## II. Standard of Review.

We review equity proceedings de novo. *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005). We give weight to the district court's findings, especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Precedent is of little value as our determination must depend on the facts of the particular case." *In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995).

When a finding of contempt is challenged on appeal, we review the evidence to ensure that proper proof—substantial evidence—supports the judgment of contempt. *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744 (Iowa 1993).

"Because of the quasi-criminal natural of the proceeding, the finding of contempt must be established by proof beyond a reasonable doubt." *Id.*

### III. Discussion.

#### A. Spousal Support.

The district court ordered Richard to pay Mary alimony in the amount of $1000 a month until he dies. Using a state mortality table and figuring Mary's life expectancy at 23.27 additional years, the court determined that Richard's total obligation is $279,240. Because Mary may outlive the projected period, Richard was also ordered to maintain life insurance in excess of $100,000 with Mary as the named beneficiary. Richard argues the court abused its discretion because it failed to consider his ability to pay the monthly spousal support. He asks that we modify the decree, reducing the amount of the monthly spousal support obligation and ordering the benefit to cease when Mary reaches retirement age.

Spousal support is not an absolute right. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Whether spousal support is proper depends on the facts and circumstances of each case. *Id.* Iowa Code section 598.21A (2011) provides the relevant factors in considering whether spousal support is appropriate, which include (1) length of marriage; (2) age and emotional and physical health of the parties; (3) property distribution; (4) educational level of the parties at the time of marriage and when the dissolution action is commenced; (5) earning capacity of the party seeking alimony, including educational background, training, employment skills, work experience, and length of absence from the job market; and (6) feasibility of the alimony-seeking party to become

self-supporting with a reasonably comparable standard of living to that enjoyed during the marriage.  *See also In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

Richard and Mary were married for over forty years.  During much of that time, Mary was responsible for raising the parties' four children while Richard worked outside of the home in his own construction company providing for the economical needs of the family.  Mary also helped with the business by doing the bookwork and some manual labor.  She was never given a salary for the work she did.  Mary only held a few other part-time positions outside of the home during the marriage.  At the time of the dissolution proceedings, she was sixty-one years old, had few job skills, and had recently suffered work injuries that limited the positions she was capable of accepting.  Mary was earning $300 every other month as a part-time writer at the time of the hearing, but was otherwise unemployed.  Because of her limited time working outside of the home, Mary's anticipated monthly social security benefit would be $280 at age sixty-two, or $411 at age sixty-six.

Richard argues he is unable to meet the $1000 monthly obligation.  Part of his argument is that the district court failed to determine his annual salary.  The district court estimated Richard had an annual salary of $60,000.  Any failure to be more specific regarding Richard's income was a direct result of Richard's refusal to comply with discovery requests and a trial scheduling order.  Traditional spousal support is meant to support a spouse who is incapable of self-support and "is payable for life or for as long as the spouse is incapable of

support." *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989). "Traditional alimony analysis may be used in long-term marriages were life patterns have largely been set and the earning potential of both spouses can be predicted with some reliability." *In re Marriage of Kurtt*, 561 N.W.2d 385, 388 (Iowa Ct. App. 1997). Here, Mary is permanently incapable of self support after years of toil for the family and reliance upon Richard's income. We do not believe her status will change when Mary reaches retirement age. We affirm the alimony award fixed by the district court.

**B. Equalization Payment.**

Richard argues the district court's distribution of marital assets and debts was inequitable. He argues the court failed to consider his medical debts, equaling $40,446.25, as marital debt when dividing the parties' assets and liabilities. He argues that if the court had properly considered the debt as marital, he would not be required to make an equalization payment of $17,224 to Mary. He also argues that the court awarded him the 2007 Hyundai with a value of $6300 but failed to take into consideration the loan of $11,859 for the vehicle. He maintains the court erroneously considered fault of the spouses in making the award.

We agree with Richard that his medical expenses should have been considered marital debt. Although the medical expenses were incurred during the parties' separation, they remained married, and the debt is a marital obligation. We also agree it is error to include the value of an asset but not its associated debt when determining a property distribution. However, we disagree

that the district court considered fault when making the property award. Rather, the court considered the economic conditions both parties face and what is fair and reasonable to both parties. In particular, we note that the district court attempted to divide the property equally between the two parties.

The question becomes whether the equalization payment is fair in light of the district court's failure to consider Richard's medical expenses as marital debt and the associated debt of the 2007 Hyundai. Our supreme court has stated:

> Even though a debt may have been incurred by a party for family expenses, it is not inequitable to order that party to be responsible for the entire amount of the debt as long as the overall property distribution is equitable. Debts of the parties normally become debts of the marriage, for which either party may be required to assume the responsibility to pay.

*In re Marriage of Sullins,* 715 N.W.2d 242, 251 (Iowa 2006) (internal citation omitted). Moreover, although the trial date is ordinarily the date for fixing the value of assets and debts, where the parties have been separated we have "recognized the need for flexibility in making equitable distributions based upon unique circumstances of each case." *In re Marriage of Campbell*, 623 N.W.2d 585, 588 (Iowa Ct. App. 2001). Moreover, one fact not acknowledged in the district court's decree is that during the marriage Mary inherited $30,000 from an aunt. These monies were used for family expenses. Although Mary has not sought to have this sum set-off to her, it remains a consideration to do equity.

No matter how we analyze the facts, the bottom line requires the property division to be equitable between the parties based upon our statutory factors. *See* Iowa Code § 598.21(5). Under these facts, we remain convinced that the equalization payment is equitable for both parties.

Because of Richard's failure to comply with a pretrial discovery order, Richard was prohibited from presenting evidence and witnesses at trial. Perhaps he could have established the inequality of the distribution if he had presented evidence. However, based on the record before us, the distribution of assets and subsequent equalization payment is fair and reasonable to both parties.

## C. Marital Residence.

The district court awarded Mary the marital residence, stating:

> The marital residence is awarded to [Mary]. [Richard] shall execute a quit claim deed for the residence within 15 days of the date of this order.
> . . . .
> [Mary] shall be responsible for placing the home on the market if she is unable to maintain the mortgage. She shall be responsible for the utilities, maintenance fees, real estate taxes and insurance associated with ownership of the properties until it is sold. [Mary] may make any necessary repairs and/or cosmetic enhancement as recommended by the realtor to ensure the sale of the home. The costs for any repairs, etc. shall be reimbursed to [Mary].
> . . . .
> [List of mutual liabilities to be paid from the sale proceeds]
> Upon the closing of the sale of the residence, the proceeds shall be divided equally between the parties after paying all appropriate fees including real estate taxes, transfer tax, commissions, abstracting expense, attorney's fees and other fees incident to the closing.

On appeal, Richard asks that we modify the decree to order Mary to sell the marital residence and to set a timeframe in which it must occur.

At first blush, the decree appears to award the property to Mary, but because of the reference to its sale and the division of the sale proceeds, the decree is more akin to an award of the right of possession until the property is sold. We agree with Richard that the district court's decree makes it appear the

decision to sell the property is within Mary's discretion. Although Mary expressed at trial her intent to sell the property, we modify the decree to require her to initiate the listing of the property to eliminate the possibility that she may keep Richard in limbo for months or even years. Accordingly, Mary shall list the marital residence with a licensed realtor within three months of the issuance of procedendo.

### D. Contempt.

Richard maintains the district court erred when finding him in contempt for failure to stay current on the mortgage payments for the marital residence and erred in ordering him to pay attorney fees of $5325 as punishment for contempt. Although a writ of certiorari challenging the legality of the district court's action is the proper remedy, we proceed to treat the case as if Richard had filed the proper petition as he has requested. *See* Iowa R. App. P. 6.108 ("If any case is initiated by a notice of appeal, an application for interlocutory appeal, an application for discretionary review, or a petition for writ of certiorari and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been requested."); *see also In re Marriage of Welsher*, 274 N.W.2d 369, 371 (Iowa 1979).

A contempt proceeding is essentially criminal in nature, and each element must have been established beyond a reasonable doubt. *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993). Only willful disobedience of a court order will justify a conviction for contempt. *Id.* In order to show willful

disobedience there must be evidence of conduct which is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not. *Bell v. Iowa Dist. Ct.,* 494 N.W.2d 729, 730 (Iowa Ct. App.1992).

We find substantial evidence supports the district court's finding of contempt. Richard was ordered to pay the mortgage payment on the marital residence each month, commencing November 2011. There were two separate instances of Richard missing multiple mortgage payments. Mary filed the first contempt application on February 8, 2012. At that time, Richard had not yet made either the December 2011 or January 2012 mortgage payment. Mary filed a second contempt application on October 2, 2012, after Richard failed to make either the August or September payment. The district court continued the contempt hearings until the time of the dissolution hearing. Richard's failure to make timely payments was willful. Although he claimed he missed payments due to inability to pay, Richard chose to help his new paramour and her daughter financially instead of making the mortgage payments, including helping purchase a new car for the daughter. As a result of the multiple late payments, Mary's credit rating has suffered.

Although we affirm the district court's finding of contempt, the court erred in ordering Richard to pay attorney fees as his punishment. Iowa Code section 665.4(2) provides the punishment for contempt as follows: "Before district judges, district associate judges, and associate juvenile judges by a fine not exceeding

five hundred dollars or imprisonment in a county jail not exceeding six months or by both such fine and imprisonment." Iowa Code section 598.24 permits the imposition of attorney fees and costs for contempt where the grounds for the contempt relate to a violation of the decree, but here, the decree had not yet been entered. Iowa Code section 598.23 recites various alternatives to a jail sentence not to exceed thirty days, but none of the alternatives are applicable to these facts.[1] The ninety days afforded Richard to pay the attorney fees might be construed as a purge order, but the disposition provides that if unpaid after six months it shall be paid from the proceeds of the house sale. Thus, we annul the writ in part, sustain it in part, and remand to the district court for re-imposition of punishment for contempt.

### E. Attorney Fees.

Mary asks this court to award her appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. *In re Marriage of Oakland*, 699 N.W.2d 260, 270 (Iowa 2005). Factors to be

---

[1] Iowa Code section 598.23 provides:

1. If a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense.

2. The court may, as an alternative to punishment for contempt, make an order which, according to the subject matter of the order or decree involved, does the following:

a. Withholds income under the terms and conditions of chapter 252D.

b. Modifies visitation to compensate for lost visitation time or establishes joint custody for the child or transfers custody.

c. Directs the parties to provide contact with the child through a neutral party or neutral site or center.

d. Imposes sanctions or specific requirements or orders the parties to participate in mediation to enforce the joint custody provisions of the decree.

considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). Because Richard's income is greater than Mary's and she was obligated to defend the district court's decision, we award her $2000 in appellate attorney fees.

**IV. Conclusion.**

We affirm the district court's determinations regarding spousal support and the equalization payment. We affirm as modified the provision regarding the parties' marital residence. Richard's writ for certiorari is annulled in part, sustained in part, and remanded for imposition of a proper contempt disposition. Finally, we award Mary appellate attorney fees in the amount of $2000. Costs on appeal are assessed to Richard.

**AFFIRMED AS MODIFIED ON APPEAL; WRIT ANNULLED IN PART, SUSTAINED IN PART, AND REMANDED.**