# IN THE COURT OF APPEALS OF IOWA

No. 13-1749
Filed June 25, 2014

**Upon the Petition of**
**TYSON GEERTZ,**
    Petitioner-Appellee,

**And Concerning**
**ROBIN BREUER, n/k/a ROBIN REINIER,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Cynthia H.

Danielson, Judge.


A mother appeals the district court's denial of her application to modify

custody and challenges the court's contempt adjudication. **AFFIRMED AS**

**MODIFIED ON APPEAL; WRIT ANNULLED IN PART, SUSTAINED IN PART,**

**AND REMANDED.**



Pamela A. Vandel, Des Moines, for appellant.

Katherine A. Daman, Des Moines, for appellee.


Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Robin Reinier appeals the district court's denial of her application to modify custody and challenges the court's contempt adjudication. Robin maintains it is in the child's best interests to modify the original decree to award her sole legal custody of her and Tyson Geertz's minor child. She also maintains substantial evidence does not support the district court's seven findings of contempt because her violation of the previous court order was not with bad or evil intention. Both parties request appellate attorney fees. Upon our de novo review, we affirm the order of the district court as modified. Regarding Robin's writ of certiorari, we annul it in part, sustain it in part, and remand to the district court for re-imposition of disposition appropriate to these findings. Finally, we award Robin appellate attorney fees.

## I. Background Facts and Proceedings.

Robin and Tyson were never married. They had a son, D.B., in February 1998. On January 29, 1999, the district court entered a decree of paternity, custody, and support. The decree granted the parties joint legal custody of D.B. and placed physical care of the child with Robin. A judgment was entered against Tyson for accrued child support from D.B.'s birth in the amount of $3477.04. Payment on the arrearage was to be made in the amount of $7.10 per week, as well as child support payments in the amount of $70.96 per week. Tyson was also required to provide mental and dental insurance and pay half of any uncovered medical bills. The decree also stated:

> DEPENDENCY EXEMPTION. [Robin] shall be entitled to claim the parties' minor child as a dependent for the purpose of federal and state income taxation for calendar years 1998 and

1999. Commencing with the calendar year 2000, the parties will alternate claiming [D.B.'s] dependency exemption, and [Tyson] may claim the exemption that year upon the condition that all delinquent and accrued child and medical support is paid in [full] by December 31, 2000. If all support owed is paid in full, [Robin] shall sign by February 1st any waiver required by the IRS or state revenue department which will allow [Tyson] to claim the exemption for that year. [Robin] is entitled to claim [D.B.'s] dependency exemption for calendar year 2001 and each alternating year thereafter. [Robin] is entitled to claim [D.B.'s] dependency exemption each year that [Tyson] fails to qualify to claim it.

Less than two years later, Robin filed a petition for modification requesting that Tyson's child support obligation be increased. The modification petition was originally resolved by a consent decree filed March 6, 2002. Tyson's child support obligation was increased to $136.86 per week and was applied retroactively. A judgment for $1311.76 was entered against Tyson, and he was ordered to pay an extra thirty dollars per week until the judgment was paid in full. Tyson was still required to maintain health insurance for D.B., but Robin was ordered to pay the first $250 of deductive or noncovered health care expenses. The remaining or noncovered medical bills were to be split with Tyson paying sixty-five percent and Robin the rest. The order also provided, "The parties shall provide to each other within two weeks after receipt a copy of each bill for medical or dental services and a copy of all insurance benefit statements so that the parties' respective obligations can be calculated."

Following the modification, Tyson submitted evidence that his gross annual income was less than that used to determine his obligation. A supplemental child support order was entered on March 20, 2002, which reduced Tyson's child support obligation to $123.41 per week. However, the Child Support Recovery Unit did not modify the mandatory income withholding until

August 8, 2002. When it was corrected, the amount of retroactive support still due was $994.23.

On March 6, 2011, the Iowa Department of Human Services (DHS) received a complaint that D.B. was involved in a physical altercation with Tyson, which resulted in D.B. sustaining cuts and bruises.

On August 22, 2012, Robin filed an application to modify custody. The application alleged that due to Tyson's founded physical abuse of D.B., it was in D.B.'s best interest to award Robin sole legal custody with any visitation awarded to Tyson to be supervised at Tyson's expense. The application also requested that Tyson be required to pay 100% of all medical and counseling expenses associated with the abuse. Finally, Robin requested that Tyson be required to pay all court costs and her attorney fees. In his answer to the application, Tyson asked the court to affirm the parties' joint legal custody but acknowledged visitation should be modified since he had relocated to New York with the United States military. He also requested Robin be required to pay all court costs and his attorney fees.

On September 11, 2012, a hearing was held before an administrative law judge (ALJ) to determine whether the DHS was correct in its classification of the incident between Tyson and D.B. as child abuse and its placement of Tyson on the child abuse registry. The ALJ heard testimony from both D.B. and Tyson regarding the incident. Both testified that Tyson ordered D.B. to do push-ups as a disciplinary measure. At some point, D.B. stopped doing push-ups and stated he wanted to call the police. The testimony differed about what happened next, but both D.B. and Tyson testified they engaged in a physical confrontation.

Tyson admitted he placed his hands on D.B.'s shoulders and tried to "coach him back to the ground." Tyson also admitted that D.B. struggled against him and Tyson then used a restraint move he had learned in high school wrestling. Following the hearing, the ALJ issued a written decision affirming the DHS's decisions.

While the modification action was pending, Tyson filed an application for rule to show cause, claiming Robin had violated the terms and conditions of the original decree regarding his right to claim the tax exemption for every other year, from 2000 through 2012, on his state and federal taxes. Robin denied the allegations, claiming Tyson had been ineligible for the exemption each year due to his failure to pay the retroactive child support ordered in 2000 decree and the 2002 modification.

On September 17, 2013, the district court held a hearing on the application for modification. The court admitted the ruling of the ALJ and heard testimony from both Robin and Tyson. Following the hearing, the court issued a written ruling staying Tyson's visitation with D.B., as both parties agreed was best at the time, but maintained shared legal custody between the two parties. The court also found Robin in contempt for failing to comply with the decree's provision regarding the tax exemption and ordered Robin to provide Tyson with the necessary paperwork to claim the tax exemption for D.B. in tax years 2013, 2014, 2015, and 2016. Robin appeals.

**II. Standard of Review.**

We review equity proceedings de novo. *In re Marriage of Olson,* 705 N.W.2d 312, 313 (Iowa 2005). We give weight to the district court's findings,

especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Precedent is of little value as our determination must depend on the facts of the particular case." *In re Marriage of White,* 537 N.W.2d 744, 746 (Iowa 1995).

When a finding of contempt is challenged on appeal, we review the evidence to ensure that proper proof—substantial evidence—supports the judgment of contempt. *Ervin v. Iowa Dist. Ct.,* 495 N.W.2d 742, 744 (Iowa 1993). "Because of the quasi-criminal natural of the proceeding, the finding of contempt must be established by proof beyond a reasonable doubt." *Id.*

## III. Discussion.

### A. Legal Custody.

The burden to modify the custody provisions of a decree is heavy. *In re Marriage of Mayfield*, 577 N.W.2d 872, 873 (Iowa Ct. App. 1998). To change the custodial provisions of a decree, the party seeking modification must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the child's best interests make it expedient to make the requested change. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The change must be more or less permanent, relate to the welfare of the child, and must not have been contemplated by the court when the decree was entered. *In re Marriage of Walton,* 577 N.W.2d 869, 870 (Iowa Ct. App. 1998). It is appropriate to modify custody when there has been a failure of communication and cooperation between parents under a joint legal custody arrangement. *See In re Marriage of Rolek*, 555 N.W.2d 675, 677 (Iowa 1996).

Here, neither party disputes a substantial change in circumstances exists. Instead, Robin contends awarding her sole legal custody is in D.B.'s best interests. Iowa Code section 598.41(3) (2011) sets forth the factors the court must consider in determining which custody arrangement is in the best interests of a child. These factors include whether each parent would be a suitable custodian, whether the parents can communicate with each other regarding the child's needs, whether both parents have actively cared for the child before and after the separation, and whether each parent can support the other parent's relationship with the child. Iowa Code §§ 598.41(3)(a), (c), (d) & (e).

We conclude granting Robin sole legal custody is in D.B.'s best interests. The founded child abuse and geographic distance between the parents weighs heavily against continued shared legal custody. *See* Iowa Code § 598.41(3)(h), (j). The geographic distance factor could be overcome if Tyson was active in the child's life. However, Tyson admitted he had very limited contact with D.B. in the two years since the founded child abuse report. He agreed to a stay of his visitation rights, so the limited contact was likely to continue. Tyson testified that the distance between he and D.B.[1] had made it impractical to see him regularly or attend counseling together, something all parties agreed was necessary to rebuild the relationship.

We acknowledge the district court noted that Robin's attitude toward Tyson's involvement in D.B.'s life caused D.B.'s healthcare providers and school authorities to withhold information from Tyson. We agree Robin should have

---

[1] Tyson lived in the state of New York at the time of the modification hearing, while D.B. remained in Iowa with Robin.

kept Tyson better informed about D.B. She may in fact be more at fault for their inability to communicate about D.B. However, Tyson's response has been essentially to wean himself from any involvement in D.B.'s life. He has made a few efforts to obtain medical information about D.B., but he has done little if anything to stay in touch with D.B.'s educational status. He attempted to contact D.B.'s therapist, but after some phone-tag with the therapist, he never followed up. We doubt Robin and Tyson's ability to communicate effectively will improve in light of the geographic distance between them unless Tyson takes steps to become an active parent. Presently, it is not in D.B.'s best interests to allow Tyson equal participation in decisions affecting D.B., such as his medical care, education, and participation in extracurricular activities, when Tyson chooses not to take an active role in D.B.'s life.

For these reasons, we modify the district court's order to award Robin sole legal custody of D.B., and we affirm as modified.

**B. Contempt.**

Robin maintains the district court erred in finding her in contempt for not permitting Tyson to claim D.B. for tax purposes in years 2000, 2002, 2004, 2006, 2008, 2010, and 2012, as the previous custody decree provided. She admits she intentionally withheld the tax exemption from Tyson in each of the listed years, but she denies she was willfully disobedient. The proper remedy to challenge the district court's act is a writ of certiorari. *See* Iowa Code § 665.11 ("No appeal lies from an order to punish for a contempt, but the proceeding may, in proper cases, be taken to a higher court for revision by certiorari."). However, we proceed to treat the case as if Robin had filed the proper petition. *See* Iowa R. App.

P. 6.108 ("If any case is initiated by a notice of appeal, an application for interlocutory appeal, an application for discretionary review, or a petition for writ of certiorari and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been requested."); *see also In re Marriage of Welsher*, 274 N.W.2d 369, 371 (Iowa 1979).

A contempt proceeding is essentially criminal in nature, and each element must have been established beyond a reasonable doubt. *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993). Only willful disobedience of a court order will justify a conviction for contempt. *Id.* In order to show willful disobedience, there must be evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not. *Bell v. Iowa Dist. Ct.*, 494 N.W.2d 729, 730 (Iowa Ct. App. 1992).

We find substantial evidence supports only four of the district court's findings of contempt. The decree provided:

> [Tyson] may claim the exemption . . . upon the condition that all delinquent and accrued child and medical support is paid in [full] by December 31, 2000. If all support owed is paid in full, [Robin] shall sign by February 1st any waiver required by the IRS or state revenue department which will allow [Tyson] to claim the exemption for that year. . . . [Robin] is entitled to claim [D.B.'s] dependency exemption each year that [Tyson] fails to qualify to claim it.

In some years, Tyson had paid in excess of his obligation, and in other years he had a deficiency. A review of the child support affidavit of arrears shows that Tyson's support obligation was paid in full on December 31 in 2000, 2002, 2008,

and 2010, which qualified him to claim the exemption in each of those tax years. However, Tyson owed child support at the end of the calendar year in 2004 and 2006.[2] It appears the district court believed that Tyson being paid-in-full at the end of 2000 and 2002 qualified him for the tax exemption each alternate year thereafter. We read the decree to require Tyson to be current on his support obligation on December 31 of each year he is eligible in order to qualify for that year's tax exemption. Thus, we find that in 2004 and 2006, Tyson failed to qualify for the exemption and Robin was entitled to claim it. Furthermore, there is no information in the record regarding Tyson's child support obligation on December 31, 2012, so we cannot say substantial evidence supports the district court's finding that Robin was in contempt for withholding the 2012 tax exemption.

Regarding the four years Tyson was qualified to claim the exemption and Robin withheld it, we find substantial evidence does support the district court's finding Robin was in contempt. Robin maintains she was not willfully disobedient because she relied on previous counsel's statements that Tyson was not eligible for the exemption. Robin's only evidence of her prior attorney's statements was her own testimony. Furthermore, "advice of counsel is no defense to a contempt action although it may be considered in mitigating the penalty to be imposed." *Palmer Coll. of Chiropractic v. Scott Cnty.*, 412 N.W.2d 617, 621 (Iowa 1987). Robin also claims she was not willfully disobedient because Tyson failed to

---

[2] A review of exhibit No. 2 shows Tyson overpaid his child support in some years and had a deficiency in other years. When the overages and deficiencies are considered in a running tally over the years, Tyson underpaid his support in the sum of $78.40 at the end of the calendar year in 2004 and $116.67 in 2006.

provide her proof he was current on his medical and child support obligations. The decree does not require Tyson to provide Robin proof. It simply states that if the support is paid in full, Robin *shall* sign the necessary waiver. We find Robin willfully disobeyed the court order regarding the tax exemption in 2000, 2002, 2008, and 2010.

Because we affirm only four of the court's findings of contempt, we annul Robin's writ in part and sustain it in part. We remand to the district court for re-imposition of a disposition appropriate to these findings.

**C. Appellate Attorney Fees.**

On appeal, both parties request an award of appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in the appellate court's discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider the needs of the party seeking an award, the ability of the other to pay, and the relative merits of the appeal. *Id.* Assuming the minimal evidence presented at trial was correct, Tyson earns significantly more annually than Robin earns. Also, Robin was successful on appeal. We award Robin $1500.

**IV. Conclusion.**

We modify the court's order to award sole legal custody of D.B. to Robin, and we affirm as modified. Robin's writ for certiorari is annulled in part, sustained in part, and remanded for imposition of a contempt disposition appropriate for these findings. Finally, we award Robin appellate attorney fees and assess the costs of the appeal to Tyson.

**AFFIRMED AS MODIFIED ON APPEAL; WRIT ANNULLED IN PART, SUSTAINED IN PART, AND REMANDED.**