# IN THE COURT OF APPEALS OF IOWA

No. 14-1003
Filed May 20, 2015

IN RE THE MARRIAGE OF ANGELA SUE RAPER
AND DOUGLAS EDWARD RAPER

Upon the Petition of
ANGELA SUE RAPER, n/k/a
ANGELA SUE GRUENING,
　　　　Petitioner-Appellant/Cross-Appellee,

And Concerning
DOUGLAS EDWARD RAPER,
　　　　Respondent-Appellee/Cross-Appellant.
_____

　　　　Appeal from the Iowa District Court for Warren County, John D. Lloyd, Judge.


　　　　An ex-wife appeals and her ex-husband cross-appeals from a district court order modifying their dissolution decree and finding the ex-wife in contempt. **AFFIRMED AS MODIFIED ON APPEAL; WRIT SUSTAINED; CROSS-APPEAL AFFIRMED.**


　　　　Kodi A. Brotherson of Becker & Brotherson Law Offices, Sac City, for appellant/cross-appellee.

　　　　Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellee/cross-appellant.


　　　　Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

Ten years after Angela Gruening, then Angela Raper, was divorced from Douglas Raper, she sought a review of the child support she received from him for their two sons—now teenagers. Her inquiries prompted Douglas to seek a modification of the physical care and visitation provisions of the dissolution decree and a show cause order to hold Angela in contempt. The district court declined to change the physical care, but increased Douglas's visitation and found Angela in contempt of two provisions in the decree. The court also ordered Angela to pay $9000 of Douglas's attorney fees.

Angela appeals the visitation modification, the child support calculation, the contempt finding, and the attorney fee award; Douglas cross-appeals the physical care provision. Because we agree with the reasons given in the district court's modification order, we affirm the existing physical care, the new visitation provisions, and the child support award. Because we do not conclude Angela acted willfully in violating the original decree, we reverse the contempt finding and sustain the writ. We also reduce the amount of trial attorney fees that Angela must pay and award no appellate attorney fees.

## I.    Background Facts and Proceedings

Douglas and Angela were divorced in 2003. The decree awarded them joint legal custody of their sons, B.R. and C.R.[1] The decree granted Angela physical care and allowed Douglas liberal visitation. Under the original decree, Douglas had visitation on alternating weekends, overnight visits every Tuesday

---

[1] B.R. was sixteen years old and C.R. was thirteen years old at the time of the modification hearing.

night from 4:30 p.m. to 8:00 a.m. Wednesday, and visitation from 4:30 p.m. to 8:00 p.m. hours on Thursday night depending on extracurricular activities of the children, as well as summer and holiday visits. But the Thursday evening visitation stopped after the parties could not agree on how to interpret the language about extracurricular activities. The parties agreed Douglas would see the children on Thursdays before his weekend visitation. The parties did not seek court action on the decree for a decade.

In February 2013, Angela requested a child support review by the Child Support Recovery Unit. Angela told Douglas in an email sent on February 12, 2013, that she wanted the review because of the increased cost of raising the children and the length of time since the amount was set. Two months later, Angela changed her employment as an accountant at Principal from full time to part time. This voluntary change decreased her yearly earnings from $44,555 to $35,100. She had not mentioned to Douglas her intention to make this change.

On March 22, 2013, Douglas filed a petition to modify the decree, asking for increased visitation and an adjustment in child support due to a "substantial change in circumstances." The parties exchanged interrogatories in June and Angela filed a motion for summary judgment on July 29, 2013. The district court denied the motion on August 8, 2013. On November 12, 2013, Douglas filed an application to show cause alleging Angela willfully disregarded the original decree by failing to provide his contact information to the school for the 2012–13 academic year, by failing to notify him of planned medical appointments and extracurricular activities until after they occurred, and by denying him Thursday

visitation since 2007, even when no activity prevented it from occurring. He also requested joint physical care.

The district court held a hearing on the modification request and the order for rule to show cause on February 11, 2014. The district court issued its order on May 15, 2014. The court found a "substantial change" in circumstances based on Angela's unreasonable interference with Douglas's visitation.

The court denied Douglas's request for joint physical care. The court reasoned: "Moving to a 50-50 shared time arrangement as proposed by [Douglas] runs the risk of disrupting the children's lives." But the court did believe Douglas "should have a significant increase in time with the children."

The court gave Douglas an extra two weeks of summer visitation, as well as a new alternating spring break visitation and time over Christmas break. The court also extended the hours of visitation, ending the weekends with Douglas at 9:00 p.m. on Sunday, rather than 5:00 p.m., as designated in the original decree. The court deleted the Thursday night visitation set out in the original decree, but instead granted Douglas "the right to not less than three evenings per month after school (4:30 p.m. on non-school days) until 9 p.m. to be scheduled in consultation between the parties and the children." In light of the increased visitation, amounting to roughly 130 overnights, the court granted Douglas a child support credit for extraordinary visitation. See Iowa Ct. R. 9.9.

The court also found Angela was in contempt of the original decree for failing to list Douglas on the school forms and failing to notify him about the children's health care appointments. The court did not find her in contempt for

denying visitation. The court declined to impose "any separate sanctions" for the contempt findings, but did consider the contempt findings when awarding Douglas $9000 in trial attorney fees.

Angela now appeals the modified visitation schedule, the child support adjustment, and the contempt findings. Douglas cross-appeals, requesting joint physical care.

## II. Scope and Standards of Review

"We review an order modifying a decree for dissolution of marriage de novo." *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We afford the district court "considerable latitude" in its determination and disturb the district court's ruling only when there was a failure to do equity. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

An appeal from a finding of contempt is limited to determining whether the district court acted without jurisdiction. *In re Marriage of Stephens*, 810 N.W.2d 523, 529 (Iowa Ct. App. 2012). Review is not de novo but at law. *Id.* We review findings of contempt for substantial evidence. *In re Marriage of Swan*, 526 N.W.2d 320, 326-27 (Iowa 1995). Substantial evidence can be described as such evidence as could convince a rational trier of fact that the alleged contemner is guilty of contempt beyond a reasonable doubt. *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744–45 (Iowa 1993).

## III. Visitation

A parent seeking to modify the visitation provisions of a dissolution decree must show a material change in circumstances since the decree and that the

requested change in visitation is in the best interest of the children. *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). This burden is less demanding than if a parent is seeking to change a custodial provision in a dissolution decree. *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009). "The rationale for this lower standard is found in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Salmon*, 519 N.W.2d at 96 (citing Iowa Code section 598.41(1)).

The district court determined that Douglas established a material change in circumstances justifying a change in the visitation provisions of the decree by presenting evidence of Angela's interference with his scheduled visitations and her unwillingness to accommodate Douglas's reasonable requests for minor departures from the terms of the original decree. The district court described Angela's position as follows: "An intransigent insistence that a 10-year old decree must be strictly enforced without any appreciable flexibility is not what would have been expected when the decree was entered. And this court can say that with some confidence since it was this court that entered the decree."

The court cited examples from the hearing testimony where Angela placed their sons in the middle of scheduling conflicts and put Douglas "in the position of being the Grinch or giving up part of his visitation." The court also observed that Angela "cut off Thursday even visitations, despite some clear issues as to how that language [about extracurricular activities in the decree] should be interpreted."

On appeal Angela argues Douglas did not show a change in circumstances sufficient to warrant a modification to visitation. She argues she was only following the decree and such compliance would not be unforeseeable to the court. She contends Douglas did not raise these issues in court until she started to explore a recalculation of child support. She also points out that the children getting older does not qualify as a material change not contemplated when the court drew up the visitation provisions in the original decree.

Considering our deference to the district court's ability to assess the credibility of witnesses, we believe the record reveals a sufficient change in circumstances to modify visitation and that the modification was in the best interest of B.R. and C.R. Angela's continued animosity toward Douglas, ten years after the divorce, and her inability to appreciate the importance of his time with their sons—manifested by her actions regarding his visitation—were not contemplated when the district court entered the decree. *See In re Marriage of Downing*, 432 N.W.2d 692, 694 (Iowa Ct. App. 1988).

Like the district court, we find telling Angela's response to an interrogatory asking her view on the proper amount of visitation for Douglas. Her answer was to eliminate all mid-week visitations, cut Douglas's summer visitation from three weeks to one week, and leave the holiday and alternative weekend schedule as it is in the decree. Her reasoning for why visitation should be decreased was not about Douglas or his ability to parent, but about the inconvenience it presented her for their sons to spend time with their father. While she did testify at the hearing that she believed visitation should remain the same as in the original

decree, the district court did not believe her moderated view. We give deference to the court's credibility findings. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

The modification of the visitation schedule ensures Douglas will have more time with his now teenaged sons, subject to less potential manipulation by Angela. We agree with the district court that the maximum opportunity to spend time in the company of both parents serves the children's best interests.

## IV. Physical Care

Douglas also requested a modification of the decree to order joint physical care. In his cross-appeal, Douglas argues shared care would provide the children with equal contact with both parents and "would prevent Angie from unduly denying the children contact with their father."

As noted above, the hurdle for showing changed circumstances justifying a switch in physical care is more burdensome than for altering visitation. Douglas needed to show a substantial change in circumstances not considered by the court when the decree was entered which affects the welfare of the children. *See In re Marriage of Thielges*, 623 N.W.2d 232, 238 (Iowa Ct. App. 2000). To put it another way, "once custody of children has been determined, it should be disturbed only for the most cogent reasons." *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996). The record does not support a substantial change in circumstances to justify a modification of physical care.

Moreover, we agree with the district court's conclusion that imposing a joint physical care structure at this point in the children's lives would not be in

their best interests.  The existing physical care arrangement has been in place for eleven years, and the children are thriving academically, are involved in many extracurricular activities, and are well-adjusted socially.  Both boys are bonded with their parents, step-parents, and new half-siblings in the home of each parent.  Angela and Douglas are both actively involved in their sons' endeavors. Introducing a new day-to-day living arrangement would risk disrupting a family life that appears to be working well for C.R. and B.R.  The district court properly denied Douglas's request for joint physical care.

**V.      Child Support Modification**

Angela challenges the court's award of credit for extraordinary visitation.[2] She reasons that because the court erred in modifying the visitation provisions, the child support calculation also was in error.

A noncustodial parent who has between 128 and 147 days of visitation per year is entitled to a fifteen percent reduction in a child support obligation.  Iowa Ct. R. 9.9 (defining days as overnights spent caring for the child).  The district court estimated under the modified visitation schedule, Douglas would have 130 days of visitation.  Because we affirm the modification, we affirm the child support calculation.

---

[2] The district court found Angela's decision to move from full-time to part-time employment was a voluntary reduction and calculated the new child support amount by imputing her full-time income.  *See In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa Ct. App. 1987) (holding a voluntary reduction does not constitute grounds for modification).  Angela does not challenge the imputation of full-time income.

## VI.    Contempt

Under the original decree, the parents were required to "consult with each other" with respect to the children's medical care and "promptly notify the other" about any serious illness or accident.  Both parents were to be named "on all legal notices," including school activities where the notice required the name of a person to contact in the event of an emergency.

In his application for rule to show cause, Douglas alleged Angela willfully violated the visitation provisions of the decree.  Douglas also complained that on two forms for the 2012–13 school year, Angela failed to list his contact information.  He also alleged Angela failed to notify him concerning the boys' extra-curricular activities and preplanned medical appointments, specifically an appointment regarding B.R.'s allergies.

The district court did not find Angela in contempt in connection with the visitation provisions or information concerning extra-curricular activities.  But the court did find Angela in contempt for "failing to advise or consult" with Douglas about the children's medical appointments and failing to list Douglas's contact information on school emergency contact forms.

On appeal,[3] Angela concedes she did not comply with those provisions, but contends the district court wrongly held her in contempt because her actions

---

[3] Douglas points out Angela filed a notice of appeal rather than a petition for writ of certiorari.  *See* Iowa Code § 665.11 (2013) ("No appeal lies from an order to punish for a contempt, but the proceeding may, in proper cases, be taken to a higher court for revision by certiorari.").  But he also notes we may treat the notice of appeal as if it were the proper petition.  *See* Iowa R. App. P. 6.108 ("If any case is initiated by a notice of appeal,  . . . and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of

were not willful violations of the decree. On the issue of medical appointments, Angela argues her conduct was in keeping with the practice of the parties during their marriage and during the eleven years since the divorce. She was responsible for scheduling doctor, dentist, orthodontist, and other appointments and only once in those eleven years had Douglas requested advance notice of an appointment. On the issue of school forms, in the eleven years since the decree was entered, Angela only failed to provide Douglas's contact information on two forms during the 2012–13 academic school year. She asserts she did not write down his contact information because she did not have it available at the time she was filling out the forms. She also presented evidence the school had a computerized "parent portal" which served as a master list and had all the contact information for both parents.

Iowa Code section 598.23 governs contempt in dissolution cases. Iowa Code § 598.23(1) ("If a person against whom a . . . final decree has been entered willfully disobeys the . . . decree, the person may be cited and punished by the court for contempt . . ."). A contempt proceeding is criminal in nature, and each element must have been established beyond a reasonable doubt. *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993). A contempt finding requires willful disobedience. *Id.* Willful disobedience means "conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Ary v. Iowa Dist. Ct.*,

---

review had been requested."). We do so, grant the writ, and proceed. *See In re Marriage of Stephens*, 810 N.W.2d 523, 529 (Iowa Ct. App. 2012)

735 N.W.2d 621, 624 (Iowa 2007) (quoting *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980), *overruled on other grounds by Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 707, 709 (Iowa 1986)).

On the record made at the hearing, we cannot find substantial evidence to support the contempt finding. Douglas did not prove beyond a reasonable doubt that Angela's noncompliance with the provisions regarding consultation on medical care and filling out school emergency forms was the kind of deliberate misconduct that rose to the level of willful disobedience. Both parents acknowledge Angela assumed responsibility for scheduling medical appointments and taking the boys to those appointments. Douglas never mentioned to Angela he wanted more information regarding the appointments. Angela did not demonstrate a willful disregard for Douglas by following the pattern developed during the decade after their divorce. Likewise, her noncompliance with the provision on legal forms was isolated and non-consequential. We do not believe it can be characterized as willful disobedience.[4] Therefore, we reverse the findings of contempt and sustain the writ.

## VII.   Trial Attorney Fees

The district court awarded Douglas $9000 in trial attorney fees—noting he was the prevailing party in both the modification and contempt actions. The award of trial attorney fees is discretionary. *Okland*, 699 N.W.2d at 270. The court properly exercised its discretion in awarding trial attorney fees to Douglas.

---

[4] We trust in the future Angela will fully inform Douglas concerning the children's medical appointments and will provide Douglas's contact information on relevant legal forms.

But because we reverse the contempt findings against Angela, we modify the amount of the award to $7000.

## VIII.   Appellate Attorney Fees

Both sides request an award of appellate attorney fees.   Appellate attorney fees are not a matter of right, but rest in our discretion.  *Id.*  We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993).  In this case, because neither party was wholly successful on appeal, we decline both requests for appellate fees.  We order each party to pay half of the costs of this appeal.

**AFFIRMED AS MODIFIED ON APPEAL; WRIT SUSTAINED; CROSS-APPEAL AFFIRMED.**