**IN THE COURT OF APPEALS OF IOWA**

No. 21-1796
Filed July 20, 2022

IN RE THE MARRIAGE OF NICHOLAS RYAN LINGLE
AND CASEY LYNN LINGLE

**Upon the Petition of**
**NICHOLAS RYAN LINGLE,**
        Petitioner-Appellant,

**And Concerning**
**CASEY LYNN LINGLE, n/k/a CASEY LYNN MONTGOMERY,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Woodbury County, Tod Deck, Judge.

        A father appeals from the partial denial of his contempt action.  **AFFIRMED.**

        Angela H. Kayl, Sioux City, for appellant.

        Kendra M. Olson, Sioux City, for appellee.

        Considered by May, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Here we address the parameters of an order of contempt of court. Casey Montgomery and Nicholas (Nick) Lingle were married in July 2016 shortly after the birth of their child, S.L. The marriage was dissolved in 2019, and in a partial agreement, the parties stipulated to joint legal custody with Casey providing physical care.[1] Under their agreement, Nick had weekly visitation beginning at 3:30 on Tuesday afternoons and ending at 8:30 on Friday mornings.[2] Nick was to either pick the child up at school or daycare or, if there was no school or daycare, the exchange would occur at the Sioux City police station; he testified, however, that their practice was to handle the exchange at the police station. The stipulation also required each parent to keep the other apprised of their home address.

When the stipulation was crafted, the parties both lived in Woodbury County. Casey informed Nick she was leaving the area once she was approved for an apartment in Omaha. True to her statement, in June 2021, Casey moved to Omaha, Nebraska to start a new job and be closer to the co-parent of her older child. She also claimed the move was motivated by S.L. reporting he heard of threats by his paternal grandmother against Casey and her older child. Nick was upset with the choice, but he agreed to a one-week-on, one-week-off visitation schedule for the month of July, acknowledging they would have to find a different solution once the school year began.

---

[1] The district court affirmed the partial agreement in its decree addressing other, non-stipulated issues.

[2] This is subject to exception, per the stipulation, for periods of the summer and holidays. It also allows for a parent to make up time, if a visitation is missed, by the end of the year.

Without consulting Nick, Casey enrolled the child in elementary school in Nebraska, contrary to Nick's wishes, and the child's first day of kindergarten started August 12. As an alternative, Casey suggested the child could be homeschooled, allowing flexibility for the child to switch between households each week, but Nick nixed this proposed solution. On August 3, Nick arrived at the police station for a visitation transfer, but the child was not there; nor was the child at his typical daycare in Sioux City. When Nick sent Casey a text message, she responded that the stipulation said he could pick the child up at daycare—the daycare now was simply in Omaha rather than Sioux City.

On August 16, Nick filed a contempt action stating (1) Casey's unilateral decision to relocate meant he was denied his parenting time for August 3–6 and August 10–13; and (2) Casey had never provided him her new address.[3] The district court heard the case in October and filed its decision the same month. The district court found Casey in contempt for not providing her address but not for the move. The father timely appealed, asking us to expand the ruling to find Casey in contempt for the move and to grant him physical care until a modification trial could be held. He also requests appellate attorney fees.

Importantly, the action we are reviewing today is not whether a modification of the custody arrangement would be appropriate—our review is limited to "whether substantial evidence exists that would 'convince a rational trier of fact that the alleged contemner is guilty of contempt beyond a reasonable doubt.'"

---

[3] This was not the first contempt of court filing by Nick. In July 2020, Nick successfully advocated for a contempt ruling and the district court found Casey in contempt of the court order for withholding visitation from Nick during that same month.

*Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998) (citation omitted); *see also In re Marriage of Wegner*, 461 N.W.2d 351, 353–54 (Iowa Ct. App. 1990) ("[O]ur review is not de novo nor is the decision of the trial court lightly reversed. From our review of the record, we find substantial evidence to support the trial court's finding that appellee is not guilty of contempt." (internal citation omitted)); Iowa Code § 598.23(1) (2021) ("If a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense.").

Contempt is a matter of willful disobedience. *McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 824 (Iowa 1996). As the party alleging contempt, Nick's burden required proving Casey had a duty to obey a court order and willfully failed to perform that duty. *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). "If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Id.* But, Nick still retained the burden of proof to establish willfulness beyond a reasonable doubt because of the quasi-criminal nature of the proceeding. *See Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 745 (Iowa 1993).

When a person is party to and willfully violates a temporary court order or final decree, the court has the power to craft a punishment. *See* Iowa Code § 598.23. While contempt "proceedings . . . are primarily punitive in nature," the court does not have to cite or punish even if all the factors of contempt are met. *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). "A court has broad discretion to consider all the circumstances surrounding the claimed violation and

unless that discretion is grossly abused, we will not disturb the contempt decision." *In re Marriage of Weichers*, No. 09-1638, 2010 WL 3325198, at *1 (Iowa Ct. App. Aug. 25, 2010). "An abuse of discretion will be found only when such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Ballanger v. Iowa Dist. Ct.*, 491 N.W.2d 179, 181 (Iowa Ct. App.1992). To be held in contempt of a court order, that order must be "clear, specific, and unequivocal so that the parties may not be misled thereby." *Phillips v. Dist. Ct.*, 106 N.W.2d 68, 145 (Iowa 1960) (citation omitted).

Although the district court expressed concerns about Casey's unilateral decision to move, it did not hold Casey in contempt because of the move to Omaha, but rather acknowledged her right, as the parent providing physical care, to have the final say on where she and the child would live. *See In re Marriage of Frederici*, 338 N.W.2d 156, 159–60 (Iowa 1983) ("Nevertheless, geographical proximity is not an indispensable component of joint custody, and, at least when the decree is silent on the issue, the parent having physical care of the children must, as between the parties, have the final say concerning where their home will be."). The stipulation put no limitation on where the child could live. Casey did inform Nick of the move and attempted to offer solutions that would allow him to maintain his parenting time. And, while Nick may understandably find the pickup location inconvenient, the stipulation does not require Casey to transport the child for his visitation.[4] While we recognize the father's frustration regarding his lack of

---

[4] The district court signaled frustration over Casey's pattern of denying visitation because she was protecting herself in "some way" from Nick, noting that pattern might rise to a "level of contempt in the future" because the district court did not find that concern to be credible.

say in the increased distance between him and his child, it does not establish the district court abused its discretion. *See In re Marriage of Sheriff*, No. 14-1410, 2015 WL 4646493, at *4 (Iowa Ct. App. Aug. 5, 2015) ("We recognize [the mother] could and should have communicated more often with [the father]. . . . Other than asserting his disagreement with the district court, [the father] has not identified how or why the district court grossly abused its discretion in denying his application. We conclude the district court did not grossly abuse its discretion in denying [his] application for rule to show cause."). This is not a modification action—we are limited to enforcing the terms of the stipulation encompassed by the dissolution decree and considering whether the district court abused its discretion. Because we find no abuse of discretion, we affirm.[5]

**AFFIRMED.**

---

[5] Nick also requests appellate attorney fees. But, as the father here is not the prevailing party, we lack the statutory authority to award them to him. *See* Iowa Code § 598.24 ("When an action for a modification, order to show cause, or contempt of a dissolution, annulment, or separate maintenance decree is brought on the grounds that a party to the decree is in default or contempt of the decree, and the court determines that the party is in default or contempt of the decree, the costs of the proceeding, including reasonable attorney's fees, may be taxed against that party."). *See Farrell v. Iowa Dist. Ct.*, 747 N.W.2d 789, 792 (Iowa Ct. App. 2008) (declining to order appellate attorney fees where party only partially prevailed in the challenge to the district court ruling).