# IN THE COURT OF APPEALS OF IOWA

No. 21-0272
Filed January 27, 2022

IN RE THE MARRIAGE OF MATTHEW S. JONES
AND SARAH J. JONES

Upon the Petition of
MATTHEW S. JONES,
  Petitioner-Appellee,

And Concerning
SARAH J. JONES,
  Respondent-Appellant.
_____

  Appeal from the Iowa District Court for O'Brien County, Charles Borth,
Judge.

  Sarah Jones appeals an order modifying a dissolution decree. **AFFIRMED**.

  Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West
Des Moines, for appellant.

  Scot L. Bauermeister of Fitzgibbons Law Firm, L.L.C., Estherville, for
appellee.

  Considered by May, P.J., Ahlers, J., and Mullins, S.J.*

  *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**MAY, Presiding Judge.**

Sarah Jones appeals an order modifying the physical-care and visitation provisions of a decree dissolving her marriage to Matthew Jones. She also appeals an order finding her in contempt for violating the terms of the decree. We affirm.

**I. Background Facts & Proceedings**

Following a five-day trial, the district court dissolved Sarah and Matthew's marriage. The August 2019 decree granted the parties joint legal custody of their four children. All four were placed in Matthew's physical care. Sarah was granted visitation with three of the children, L.J., M.J.J., and M.A.J. The court did not grant Sarah any specific visitation with A.J., whose relationship with Sarah is extremely contentious. Instead, the court ordered

> Sarah's visitation with A.J. shall be at the discretion of Matthew. Matthew shall follow the recommendations of mental health counselors. The parties shall participate in the counseling recommended to improve Sarah and A.J.'s relationship, whether that be individual or joint counseling. It is the expectation of this court that eventually A.J. will visit Sarah as the other children [do].

The decree also commanded: "The parties shall in good faith participate in joint parental counseling and continue ongoing counseling for A.J."

In October, less than three months after the initial decree, Matthew filed for modification. Matthew asked for sole legal custody of A.J. In support, Matthew alleged Sarah "has consistently interfered with A.J.'s counseling, and has emotionally and mentally abused A.J. to the point where joint legal custody is no longer in A.J.'s best interest."

Soon after, Matthew filed an application for rule to show cause. It alleged Sarah violated the decree's requirements concerning A.J.'s counseling.

In late November, Sarah answered Matthew's modification petition. In a counterclaim, Sarah requested physical care of L.J., M.J.J., and M.A.J.

In May 2020, Matthew filed an amended pleading. He asked for sole legal custody of all four children. He also asked for the court to allow Sarah only "supervised visitation."

Over five days, the court heard evidence concerning the parties' modification requests as well as Matthew's contempt claims. Ultimately, the court: (1) granted Matthew's request for sole legal custody of A.J. but denied it for the other three children; (2) granted Sarah's request for physical care of L.J.; (3) denied Sarah's request for physical care of M.J.J. and M.A.J., keeping them in Matthew's physical care; and (4) adjusted Sarah's visitation with M.J.J. and M.A.J. The court also found Matthew had "proven beyond a reasonable doubt that Sarah's behavior was contemptuous in violation of the decree wherein the court had ordered that '[t]he parties shall in good faith participate in joint parental counseling *and continue ongoing counseling for A.J.*'" As punishment, the court ordered Sarah to pay $3000.00 toward Matthew's attorney fees.

On appeal, Sarah contends (1) we should modify the dissolution decree to place physical care of M.J.J. and M.A.J. with her; (2) alternatively, we should modify her visitation with M.J.J. and M.A.J.; and (3) we should reverse the district court's finding of contempt against her.[1] We address each contention below.

---

[1] The court actually found Sarah in contempt on two different grounds: (1) Sarah's interference with A.J.'s counseling, as described above; and (2) additionally,

**II. Standard & Scope of Review**

Modification actions lie in equity.  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  So we review the issues de novo.  *See* Iowa R. App. P. 6.907; *In re Marriage of Robbins*, 510 N.W.2d 844, 844 (Iowa 1994).  And although we are not bound by them, we give weight to the district court's factual findings because—among other things—the trial judge is in a better position to assess credibility.  *In re Marriage of McKee*, No. 20-1242, 2021 WL 4592258, at *1 (Iowa Ct. App. Oct. 6, 2021).

A different standard applies in contempt actions.  *In re Marriage of Swan*, 526 N.W.2d 320, 326–27 (Iowa 1995).  "If there has been a finding of contempt, we review the evidence to assure ourselves that the court's factual findings are supported by substantial evidence."  *Id.*  "The district court's legal conclusions are reviewed for errors of law."[2]  *Id.* at 327.

---

Sarah's violation of the decree's physical-care provisions by preventing Matthew time with M.J.J. and M.A.J.  In this appeal, Sarah only contests the former finding.

[2] And "[a] different standard of review exists on appeals from the trial court's *refusal to hold a party in contempt* under a statute" like Iowa Code chapter 598 (2019) that allows the trial court discretion.  *Swan*, 526 N.W.2d at 327 (emphasis added).  As our supreme court explained in *Swan*, the district court has "broad discretion" to withhold punishment *even when* "a willful violation of a court order has been shown."  *Id.*  A court's refusal to punish "must stand" "unless this discretion is grossly abused."  *Id.*; *see also McKee*, 2021 WL 4592258, at *3 (finding no abuse of discretion in the district court's refusal to punish); *Wendt v. Peterson*, No. 20-1018, 2021 WL 1400816, at *2 (Iowa Ct. App. Apr. 14, 2021) (same).

In this case, however, no one appeals the district court's refusal to hold a party in contempt.  So this discretionary standard does not apply.

## III. Discussion

### A. Physical Care of M.J.J. and M.A.J.

We begin with Sarah's request to switch physical care of M.J.J. and M.A.J. from Matthew to her. A parent seeking to modify a child's physical care arrangement faces a "heavy burden." *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995). As our supreme court explained in *In re Marriage of Frederici*:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

338 N.W.2d 156, 158 (Iowa 1983).

Like the district court, we do not conclude Sarah has met this "heavy burden." *See id.* For starters, Sarah has failed to show that "conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to" remove the children from Matthew's physical care. *See id.* The concerns Sarah raises—such as discord between the parties and difficulties in communication—predate the dissolution decree, which described the parties' struggles in some detail. And while these problems appear to have intensified since the decree, we believe Sarah—not Matthew—is principally responsible.

In any event, following our de novo review of the record, we adopt the district court's finding that "Matt[hew] has been meeting the children's physical, emotional, educational and other daily needs while in his care." And like the district court, we do not find Sarah has proven "an ability to minister *more effectively* to the children's well being." *See id.* (emphasis added). So we decline to disturb the physical care arrangement for M.J.J. and M.A.J.

**B. Visitation with M.J.J. and M.A.J.**

As an alternative, Sarah asks us to change her visitation with M.J.J. and M.A.J. Under the original decree, the visitation schedule "essentially equate[d] to a shared-physical-care arrangement." Sarah was entitled to "alternating weeks"[3] plus alternating holidays. The modification order reduced Sarah's visitation rights with M.J.J. and M.A.J. Now Sarah is entitled to alternating weekends, one three-hour weekday visit, two weeks of summer visitation, and alternating holidays. On appeal, Sarah asks us to reverse this modification and restore the original dissolution decree's schedule.

The standard for modifying visitation is less stringent than for modifying physical care. "A parent seeking to modify visitation must only establish 'that there has been a *material change in circumstances* since the decree and that the requested change in visitation is in the best interests of the children.'" *In re Marriage of Brown*, 778 N.W.2d 47, 51–52 (Iowa Ct. App. 2009) (quoting *In re Marriage of Salmon*, 519 N.W.2d 94, 96 (Iowa Ct. App. 1994)).

---

[3] Although "[t]he parent not caring for the children" got a midweek overnight visit.

Following our de novo review, we conclude Matthew has met this burden. Sarah's post-decree hostilities toward A.J. are deeply troubling, especially because M.J.J. and M.A.J. have sometimes been present. We are also troubled by Sarah's disparagement of Matthew—calling him "a rapist," for example—in front of M.J.J. and M.A.J. We agree these actions justify modifying Sarah's visitation with M.J.J. and M.A.J. On this issue, we affirm.

**C. Contempt**

Next, Sarah appeals the district court order holding her in contempt for interfering with A.J.'s therapy. Around the time of the initial dissolution trial, A.J. was seeing Valorie Royster for routine therapy appointments. After entry of the August 2019 decree, Sarah began communicating more with Royster. These communications became contentious. Sarah told Royster that she did not want Royster to continue seeing A.J. until after a full psychological evaluation had been ordered, even though none of A.J.'s treating doctors or Royster recommended one. Sarah also told Royster that she would call the licensure board if Royster saw A.J. again without a full psychological evaluation. As a result, Royster stopped seeing A.J.

The district court found Sarah's interference with A.J.'s therapy amounted to contempt. On appeal, Sarah claims "there is insufficient evidence" to support the contempt finding. We disagree.

We affirm a finding of contempt if substantial evidence supports the district court's finding that the contemner willfully violated a court order beyond a reasonable doubt. *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 744 (Iowa 1993). Contempt requires proof of two elements: "the contemner (1) had a duty to obey

a court order, and (2) willfully failed to perform that duty." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). "Willfulness" includes "'intentional and deliberate' conduct . . . contrary to a known duty." *Opat v. Ludeking*, 666 N.W.2d 597, 607–08 (Iowa 2003).

Here, there is no question the decree imposed a duty on the parties to "in good faith participate in joint parental counseling and continue ongoing counseling for A.J." Sarah does not dispute that this prohibited her from interfering with A.J's therapy with Royster. Instead, Sarah claims there was insufficient evidence that she "intentionally interfered" with the therapy. We disagree. In an email to Royster, Sarah expressly insisted that A.J.'s therapy cease. Other emails also demonstrate Sarah's interference with the therapist-client relationship between Royster and A.J. Sarah directed Royster to discuss certain topics in her sessions with A.J. and unilaterally attempted to cancel appointments for A.J. And then Sarah called Royster and threatened to call the licensure board to file a complaint against Royster. As a result of this call and other interference by Sarah, Royster halted her therapy sessions with A.J. This evidence amply supports a finding of willful interference by Sarah. So we affirm the district court's finding of contempt.

### D. Appellate Attorney Fees

Matthew requests $9614.50 in appellate attorney fees for his role defending the modification decree. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005); *see also* Iowa Code § 598.36 ("In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court."). When

considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (citation omitted). After considering all of these factors and the record as a whole, we award Matthew $5000 in appellate attorney fees.

**IV. Conclusion**

We affirm the district court's modification order on both the physical-care and visitation grounds. We also affirm the district court's contempt ruling. And we award Matthew $5000 in appellate attorney fees.

**AFFIRMED.**